(Surrogate's Court, New York County. December, 1900.)

1. GUARDIAN AND WARD—DISBURSEMENTS.
   That a guardian neglected to apply for an order fixing the amount to be disbursed from the ward's estate for her support did not preclude him from obtaining allowance of such sums as clearly would have been granted, had application been made.

2. SAME—WARD'S SUPPORT.
   Where a mother's income was not sufficient for the support of her daughter, who was also her ward, the child's estate should contribute to her own support.

3. SAME—GUARDIAN'S HUSBAND.
   Where a child's widowed mother, who was also her guardian, married again, the stepfather did not become obligated to support the child.

4. SAME—INTEREST.
   Where a fund, as it reached the hands of a guardian, was a deposit in a savings bank, drawing 4 per cent. interest, and so small that no proper investment would have produced 6 per cent., it was improper to charge the guardian the latter rate of interest, with annual rests.

5. SAME—UNWARRANTED INVESTMENT—RATIFICATION.
   Where a guardian loaned her ward's money on a note with inadequate security, and the ward, after coming of age, with full knowledge of all the facts, and with the advice of her husband and counsel, took the note from the guardian's surety, demanded payment of it from the maker, put it into her attorney's hands for collection, and thereafter retained it, the unwarranted investment was ratified, and the amount thereof could not be charged against the guardian.

Judicial settlement of the account of Dina Klunck, formerly Gruther, as general guardian of Josephine Dreisacker, an infant.

Griffin & Young, for guardian.
Ewing & Geiger, for contestants.

THOMAS, S.  Dina Klunck, formerly Dina Gruther, is accounting as guardian of her daughter, Josephine Dreisacker, formerly Josephine Gruther.  Letters of guardianship were issued on October 25, 1881, at which time the infant was a little over three years of age.  The fund received by the mother as guardian was $2,964.18, being two-thirds of the estate of her husband, the father of the infant, while she received for her own use, as one-third of the estate, a grocery store in Rivington street, in this city, valued at $1,482.09. From the time of the death of her first husband until the infant married, on February 19, 1895, she being then about 17 years of age, the infant was supported and maintained by her mother.  That this was done by great effort and self-denial on the part of the mother abundantly appears.  The grocery store was not profitable, and, after operating it for about two years after her husband's death, or until about June 28, 1882, a sale at auction was had, which produced no returns, it was abandoned at a loss, and the mother found herself without any means, dependent for support on her own exertions.  For the five years following, and until August 23, 1887, the mother found employment as a housekeeper or domestic servant, and she was able to keep the infant with her by accepting smaller wages than she would otherwise have received.  The mother then, in 1887, the infant being about 9 years of age, married Charles Klunck, who conducted a small hotel and country store at Scarsdale, and the infant was taken to the home of her stepfather.  From this time the infant was maintained on a scale of comfort quite equal to that of her mother.  She was sent to school and boarding school, and otherwise trained and educated, and the clothing furnished her was even better than that appropriate to the mother's station in life.  When she was married, in 1895, she was supplied with an outfit deemed suitable for the event, and subsequent to the marriage, and up to the time of the commencement of these proceedings, the mother, at intervals, continued to incur expenses for her daughter.  In spite of all of this, the fund of the infant, which was $2,964.18 in 1881, after all of the deductions and allowances approved by the referee, has been determined by him to have increased so as to amount, at the date of his report, to the sum of $4,251.27.  My judgment is that this result is erroneous.  The guardian would have acted more prudently if she had applied to this court, at the earliest possible date, for an order fixing an amount which might properly be disbursed by her out of the estate of her daughter for support and maintenance; but it is quite clear that such an order would have been granted if it had been applied for, and for such sums as would have been allowed for that purpose, in case she had made application therefor in advance, she may properly be credited now.  Hyland v. Baxter, 98 N. Y. 610; Browne v. Bedford, 4 Dem. Sur. 304, and cases cited by Rollins, S.; Shepard v. Stebbins, 48 Hun, 247, 252.  In making this allowance, we are not to close our eyes to the fact that an accurate account of the expense of maintaining and educating a child from infancy, as a member of a family composed mainly of adults, is a practical impossibility.  The cost of each loaf of bread consumed cannot be ap-

portioned with absolute accuracy between the infant and the others sharing in it, and to make an exact charge therefor against the infant would be to descend to puerilities. In such cases, an approximation to the due share of the infant in the family expenses is all that is required or is possible. Shaw v. Bryant, 90 Hun, 374, 35 N. Y. Supp. 909, affirmed in 157 N. Y. 715, 55 N. E. 1132; Shepard v. Stebbins, supra. The very capable and careful referee has conceded this principle, but in applying it he has, I think, judged the guardian somewhat too harshly. During the period when she was managing the grocery store, although the gross receipts of the store sufficed for the support of both mother and daughter, it was not the income of the mother, but capital, since the whole thing shortly ended in wreck. Under such circumstances, the child's estate should contribute towards her own support, and for the period from October 31, 1881, to June 28, 1882, I allow four dollars per week. After the date of the sale of the store, on June 28, 1882, and while the guardian was working as a housekeeper or domestic servant, until August 23, 1887, the date of her marriage, I allow four dollars per week instead of three dollars, allowed by the referee. I disagree with the referee in his ruling that the stepfather became obligated to support the infant, and to hold her estate harmless from any expense, after his marriage with the mother, and I allow, over and beyond the value of the services rendered by her, and in addition to the specific disbursements proved and found by the referee, five dollars per week from August 23, 1887, to February 19, 1895, as the probable reasonable cost of the infant's maintenance. The referee has charged the guardian with interest at 6 per cent., with annual rests on all balances. Such a method of computing interest against a delinquent guardian or other trustee is proper in some cases, but is entirely without reason here. The fund, as it reached the hands of the guardian, was a deposit in a savings bank, where the interest was only 4 per cent., and it was so small in amount that no lawful or proper investment would have produced 6 per cent. interest. Though the guardian acted irregularly, good faith on her part abundantly appears, and I will charge the guardian with interest on unexpended balances at only 4 per cent., with annual rests, except that interest actually collected and received on the loans of money must be charged. A substantial loss was incurred by a loan of $1,000 to Louis J. Bohne, on a promissory note of Louis J. Bohne and M. E. Bohne, his wife, secured by a policy of insurance on the life of the borrower. The security is worthless, and, after paying interest at 5 or 6 per cent. until October 1, 1896, the borrower, having become insolvent, ceased all payments, and the entire principal, with interest from the last-named date, is still unpaid. This was an investment entirely unauthorized by law, and it could not be allowed to the guardian as a proper disposition of her daughter's estate, if it were not for the fact that since the daughter became of age, and with full knowledge of the facts, and with the advice and assistance of her husband and of counsel, she has treated the note as her own, and thus ratified and adopted it. The note in question was payable, by its terms, "to Josephine Gruther, or to Dina Gruther,

as guardian of Josephine Gruther," and was, in 1899, in the custody of Francis C. Gruning, one of the sureties of the guardian. In November or December of that year, Mrs. Dreisacker, the ward, being then over 21 years of age, called on Mr. Gruning, with her husband, and requested that the note be delivered to her, stating that she wanted to try and collect it. The note was so delivered by Mr. Gruning, who requested its return to him. Efforts were then made by Mrs. Dreisacker to collect the note. At her request, her husband called, with the note, upon the maker, and requested payment, and subsequently he delivered it to her attorney for purposes of collection. The note was never returned to the guardian or to her agent, Mr. Gruning, and no offer was made to return it, until after the guardian had filed an account, in which she stated that the note had been converted by the ward "to her own use." As a part of the objections filed to this account, the offer to return the note was made for the first time. Upon the theory that the note represented an illegal and unauthorized investment, which the ward repudiated and refused to ratify, the ward had no right to its custody or to any moneys obtainable upon it. The demand for the possession of the note, the demand of payment of the note, the placing of it in the hands of her attorney for collection, its continued retention, were all acts declaratory of her claim to ownership, and constitute an election to ratify and approve of the investment. Having voluntarily taken the security into her possession, and dealt with it as her own, she may not now take an inconsistent attitude. The referee's sixth conclusion with respect to that note is overruled, and the guardian is credited with its amount. In view of the irregularities in the keeping of accounts, and the difficulties thereby created, and also in view of the facts as to the unlawful investment already recited, no commissions will be awarded to the guardian, and she will be denied costs. The disbursements of the proceeding, including the fees of the referee and the stenographer, will be charged against the fund if any balance is found, and, if not, against the contestant personally, but no other costs will be awarded. Submit decree on notice, containing a statement of the account on the principles here stated.

Decreed accordingly.