NATIONAL SURETY COMPANY, Appellant, *v.* MANHATTAN MORTGAGE COMPANY, Respondent.

First Department, January 10, 1919.

Guardian and ward — trusts — liability of mortgagee which sold subordinate interest in first mortgage to guardian of infants, which interest was subsequently wiped out upon foreclosure — unlawful investment — liability of trustee for wrongfully diverting or assisting in diverting trust funds.

Where a mortgagee sold a subordinate interest in a first mortgage held by it to a guardian with knowledge that it was thereby unlawfully taking from the guardian moneys of infants, and upon a foreclosure of said mortgage the interest of the guardian which constituted in effect a second and subordinate mortgage was wiped out, said mortgagee is liable for such loss, whether or not it acted as vendor of a part of the mortgage or as agent for the guardian in the purchasing of the mortgage interest or even as merely aiding or abetting in the use of the funds known by it to be unlawful.

The investment by the guardian, although denominated an interest in the first mortgage, was, in effect, on real estate incumbered to the extent of the mortgage interest held by the mortgagee, and was, therefore, unlawful.

Where a trustee wrongfully diverts trust funds, he is liable as for a devastavit, and all knowingly assisting him therein are generally liable for the injury done to the *cestui que trust.*

APPEAL by the plaintiff, National Surety Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 2d day of July, 1918, dismissing the complaint on the merits upon the decision of the court after a trial before the court, a jury having been waived.

*William R. Page,* for the appellant.

*Carlton B. Pierce,* for the respondent.

SMITH, J.:

In February, 1913, the defendant held a mortgage for $20,000 covering premises owned by the Orosant Construction Company. That company desired to increase the mortgage to $25,000. The defendant agreed to surrender its $20,000 mortgage and take a prior interest in a $25,000 first mortgage, provided someone could be found to take a subordinate $5,000 interest. One Annie G. Wallace, an old lady, was the guardian of George F. Brennan and Mary K. Brennan. She had money of theirs in her possession and her attorney induced her to take that $5,000 subordinate interest. In pursuance of these agreements the Orosant Construction Company executed to defendant a mortgage for $25,000 and defendant sold to Annie G. Wallace a subordinate interest to the amount of $5,000. The agreement was drawn by the defendant company and recites: " Whereas, the party of the first part [to wit, Annie G. Wallace] has this day purchased from the party of the second part a subordinate interest amounting to Five thousand ($5,000) in a certain Indenture of Mortgage and the bond which it secures." The paper then recites that the defendant is the owner of a $20,000 interest, but the ownership of the defendant is prior and superior to that of Annie G. Wallace, and that the interest of Annie G. Wallace is the same as though she held a second and subordinate mortgage to that of defendant.

It then provides that the defendant was to receive all payments of interest and was to pay to Annie G. Wallace after its own claim was satisfied. The interest of Annie G. Wallace was not assignable, while the interest of the defendant was assignable. In that agreement the interest of Annie G. Wallace is stated as guardian of the two infants before mentioned. This mortgage was afterwards foreclosed and the interest of Annie G. Wallace was wiped out. Thereafter, upon an accounting Annie G. Wallace was charged with this sum as having been improperly invested and this plaintiff, which was the surety upon her bond, was compelled to pay the same. The substituted guardian, upon the payment by the plaintiff of the amount, assigned to the plaintiff any claim that he might have against the defendant company. Thereupon, this plaintiff brought this action to recover these moneys as unlawfully received and paid out by the defendant. The trial court has dismissed the complaint upon the ground that the defendant was a mere conduit to transfer the moneys from Annie G. Wallace to the Orosant Construction Company which was in fact borrowing the same.

That this investment was an unlawful one cannot be questioned. By section 85 of the Domestic Relations Law (Consol. Laws, chap. 14; Laws of 1909, chap. 19) a guardian holding trust funds for investment had the power provided by section 111 of the Decedent Estate Law for an executor or administrator. By section 111 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18)* it is provided: " An executor, administrator, trustee or other person holding trust funds for investment may invest the same in the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon." By subdivision 6 of section 146 of the then existing Banking Law (Consol. Laws, chap. 2; Laws of 1909, chap. 10)† it is provided that savings banks may invest in bonds

---

* Since amd. by Laws of 1918, chap. 544.— [REP.

† Now Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), § 239, subd. 6.— [REP.

and mortgages on unincumbered real estate to the extent of sixty per cent of the value. The same rule holds substantially as to all trustees, as shown in section 21 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45),* in which trustees generally are authorized to invest in securities in which savings banks are authorized by law to invest, and in bonds and mortgages on unincumbered real estate worth fifty per cent more than the amount loaned thereon.

Although this investment was in what was denominated a first mortgage, nevertheless it was a subordinate interest in that mortgage; therefore, it was on real estate incumbered to the extent of a mortgage interest held by this defendant which was prior to the guardian's interest therein.

Nor can the defendant escape liability for its wrongful act in taking these moneys upon the claim that it was a mere conduit. The $25,000 mortgage was taken in the name of the defendant and a $5,000 subordinate interest was purchased by Annie G. Wallace from the defendant and the money paid therefor to the defendant. The defendant had full notice that it was taking these moneys unlawfully from a guardian. The contract was made with Annie G. Wallace, as guardian, and, moreover, the evidence is to the effect that defendant was notified before that and was warned that it was dealing with the funds of an infant. Even if it can be claimed that this was not a purchase of a subordinate interest in this mortgage, but that the defendant handled these moneys for the purpose of buying for the said guardian what was in substance a second mortgage upon the premises, the defendant is clearly liable, because even in that aspect it made itself a trustee of this fund which it unlawfully diverted and for which it became liable either to Annie G. Wallace or her successor and, therefore, this plaintiff as the assignee of the substituted guardian.

Where a trustee wrongfully diverts trust funds he is liable as for a devastavit and all knowingly assisting him therein are generally liable for the injury done to the *cestui que trust.* This is a salutary rule and is in accord with that principle

* Since amd. by Laws of 1918, chap. 544.— [REP.

of law which makes all persons knowingly participating in a wrong equally liable for the damages sustained thereby.

In *Anderson* v. *Foster* (112 Ga. 270) the rule is thus stated: " One who aids and assists a trustee in misapplying trust funds, with knowledge of his misconduct, is directly accountable to the person injured by such misapplication, although the person thus assisting the trustee does not himself reap the fruits of the misappropriation, but pays the fund over to another, whom he represents." Now, this case was decided upon the Civil Code of Georgia (§ 3200),* but that provision of the Civil Code is but a statement of the common-law liability.

In *Safe Deposit & Trust Company* v. *Cahn* (102 Md. 530) the rule is stated that a person abetting a defaulting trustee becomes, by participation in the breach of trust, a trustee and amenable to the jurisdiction of a court of equity in a suit by a substituted trustee. It is further said that a general partnership wrongfully aided a trustee in misappropriating trust funds. It was then dissolved, and a limited partnership took its assets and assumed its liabilities. Held, that the liability of the general partnership to make restitution of the trust estate was included in the liability assumed by the limited partnership.

In *Loring* v. *Salisbury Mills* (125 Mass. 138) it is held: " If a corporation issues a certificate of stock to A, as trustee, and has notice of the name of the *cestui que trust*, and, on A's wrongfully transferring the certificate, issues a new certificate without making any inquiry, it is liable to the rightful owner, if he is injured thereby, without proof of fraud or collusion between the corporation and the trustee."

In *Bank* v. *Byrnes* (61 Kans. 459, 464) the opinion in part reads: " As a general principle, all persons who knowingly participate or aid in committing a breach of trust are responsible for the wrong and may be compelled to make good the loss."

This rule of law is recognized also in *Perry* v. *Oerman & Blaebaum* (63 W. Va. 566; 60 S. E. Rep. 604) in which it is held: " It must be shown that he knowingly partakes in the

---

* See Park's Anno. Code of Georgia (1914), § 3784.— [REP.

breach of trust to charge a third person as a party to misappropriation of a trust fund."

In *Clarkson Home* v. *Missouri, K. & T. R. Co.* (182 N. Y. 47) it is held: "Where　*　*　*　the treasurer of [a] corporation, without the knowledge or consent of the corporation or any of its officers and with the intent of converting them to his own use, abstracted certain railway bonds registered in the name of the corporation,　*　*　*　induced the transfer agent of the railway company, a member of the New York Stock Exchange, to change the registration into bonds payable to bearer and by the same means induced a broker, also a member of the exchange, who knew the bonds were registered, advised him how to change them, assisted in the preparation of the power of attorney which was witnessed by him, and who transmitted all the papers on which the transfer agent acted, to sell them and pay over to him the proceeds, which he appropriated to his own use and then absconded, the corporation may recover from either party the bonds or their value.　*　*　*　The railway company is liable because it knew the bonds belonged to the ·corporation and violated its undertaking therewith that it would not transfer them except by its direction or that of its duly authorized attorney, thus enabling them to be sold in the market, and the fact that its transfer agent was deceived by misrepresentations and forgeries does not relieve it from liability. The broker is liable because he knew the bonds belonged to the corporation both before and after the registration was changed and that he had no right to sell them without its authority, and the fact that he was also deceived does not relieve him from responsibility."

In *Clark* v. *Whitaker* (19 Conn. 319) it was held: "Where a party was not personally engaged in the acts of taking possession, using and disposing of the property in question, but co-operated with the principal actor, by aiding and abetting him in doing those acts and subsequently recognized and approved of them; he was held to be chargeable with the conversion."

In *Moore* v. *Eldred* (42 Vt. 13) it was held that one having reason to believe that personal property in the possession of another person has not been lawfully acquired, advises or co-operates with such person to induce him to make a sale of it, may be held liable directly as a conversion.

In *Cone* v. *Ivinson* (4 Wyo. 203, 230; 35 Pac. Rep. 933) it is held that one who instigates a conversion is as much a principal as the one performing the act of conversion.

These authorities are directly in point because a trustee who wastes the property of an estate and is guilty of devastavit, converts that property and may be held liable in an action for conversion. Whether or not, therefore, the defendant may be held to have acted as vendor of a part of the mortgage, or as agent for the guardian in the purchasing of the mortgage interest, or even as merely aiding or abetting in the use of these funds, known by him to be unlawful, it has become liable to the plaintiff for the injuries sustained.

The judgment should, therefore, be reversed and judgment directed for the plaintiff as demanded in the complaint.

Findings and judgment to be settled upon notice.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment reversed, with costs, and judgment directed for plaintiff as demanded in complaint, with costs. Order to be settled on notice.

