ANNIE V. HOYT, Appellant, *v.* DOLLAR SAVINGS BANK OF THE CITY OF NEW YORK, Respondent.

First Department, April 4, 1919.

**Trust — when savings bank not liable for participation in illegal investment of trust funds of infant by guardian — evidence — ratification by infant after becoming of age of acts of her guardian in investing trust funds — estoppel from claiming illegality of acts of guardian after settlement of his accounts.**

A real estate broker employed to procure a loan of $20,000 on certain real property secured $17,000 from a savings bank and $3,000 from the guardian of an infant. No part of the trust funds of the infant passed through the hands of the bank or any one representing it. At the same time and as part of the same transaction the bank and the guardian entered into a participation agreement reciting that the bank held a bond and mortgage on the property to secure the entire loan, and that the guardian had an interest in said bond and mortgage to the extent of $3,000. By said agreement the bank in effect held a first mortgage for $17,000 and the guardian a second and subordinate mortgage for $3,000. The two loans were entirely distinct and independent of each other, although secured by the same mortgage. Thereafter the infant after

becoming of full age, with knowledge of the transaction, consented to the discharge of her guardian in a proceeding for an accounting. Later the mortgage was foreclosed by the bank resulting in a small deficiency. Thereupon the former infant filed a petition in the Surrogate's Court to have the decree discharging her guardian reopened and his account surcharged with the sum of $3,000 and interest, which application was denied.

In an action subsequently brought by said infant to recover the sum of $3,000 and interest from the bank, *held,* that the defendant was in no manner responsible for the loss of plaintiff's trust funds and did not participate in the illegal loan and in no manner profited thereby.

The rule that any person who receives property knowing it to be the subject of a trust, and that it has been transferred in violation of the legal duty of the trustee thereof, takes it subject to the right of the *cestui que trust* and of the trustee to reclaim possession thereof, has no application to this case.

The plaintiff by her acts after reaching her majority with reference to said mortgage and in receiving various interest payments thereon ratified the act of her guardian in thus investing her trust funds and is bound by his accounting and estopped from claiming the illegality of his acts.

SMITH, J., dissented, with opinion.

APPEAL by the plaintiff, Annie V. Hoyt, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 22d day of January, 1918, upon the decision of the court after a trial at the Bronx Special Term and also, as stated in the notice of appeal, from the decision.

*Patrick J. O'Beirne,* for the appellant.

*George M. Mackellar* of counsel [*Mackellar & Gerbracht,* attorneys], for the respondent.

MERRELL, J.:

The plaintiff has appealed from a judgment in favor of defendant dismissing plaintiff's complaint upon the merits upon a trial of the issues before the court without a jury. The action is to recover the sum of $3,000 and interest, the plaintiff claiming that the defendant had participated in an illegal investment of trust funds, the property of the plaintiff, and which investment was made by plaintiff's guardian while she was an infant under the age of twenty-one years.

In the month of August, 1912, the Mitchell-McDermott Construction Company employed one Sinske, a real estate

broker, to procure a loan for it of $20,000, and offered to secure said loan by a first mortgage upon certain real property of the said Mitchell-McDermott Construction Company in the city of New York. The broker applied to the defendant for such loan. The defendant was unwilling to lend $20,000 upon the property, but was willing to lend $17,000 thereon and to permit the borrowing of the remaining $3,000 to make up the $20,000 required, from some other party, providing one could be obtained who was willing to advance said $3,000 and accept subordinate security therefor. The consent of the defendant to such arrangement was upon the express understanding that, to the amount of the $17,000 loaned by it, defendant should hold a first and prior lien upon the said real property of the borrower, and that whoever should loan the $3,000 should accept subordinate security to that of the defendant. Thereupon the broker applied to different parties for the loan of $3,000 upon such subordinate security to that to be held by the defendant. Finally the broker applied to one Patrick J. O'Beirne, an attorney, of New York city, who stated that he believed he had a client who would advance the necessary $3,000 and accept such subordinate security therefor. O'Beirne, however, stated that if he produced the party thus willing to loan $3,000 and accept subordinate security to that of the defendant for moneys loaned by it, he should demand and be paid a fifteen per cent commission, or $450. To such demand the borrower acceded, and O'Beirne produced the uncle, and general guardian, of the plaintiff, one John F. Caragher, who consented to loan the required $3,000 from funds in his hands as guardian of the plaintiff. The loan was closed at the law offices of the attorney for the defendant, and on September 13, 1912, a mortgage was executed by the Mitchell-McDermott Construction Company to one George H. Fitzgerald, who was a clerk in the office of defendant's attorneys. The mortgage was given to secure the payment of $20,000, which money was that day paid to the borrower, the sum of $17,000 being paid by the defendant, and the balance of $3,000 was paid to the Mitchell-McDermott Construction Company by O'Beirne, representing plaintiff's guardian. O'Beirne testified that the money which he thus furnished had been delivered

First Department, April, 1919.          [Vol. 187.

to him by said guardian. Up to this time defendant had no knowledge or information as to the identity of the party who was to furnish the $3,000 to make up the $20,000 required by the Mitchell-McDermott Construction Company. No part of the $3,000 of plaintiff's trust funds passed through the hands of the defendant or any one representing it. The $3,000 of plaintiff's money was brought to the conference by O'Beirne himself in cash and check, and was paid by him directly to the borrower. From the $20,000 thus received by the Mitchell-McDermott Construction Company, Sinske, the broker, received a commission of $875, and O'Beirne, representing the guardian, received $450 for producing his client, the plaintiff's guardian, who was willing to advance the $3,000 on such subordinate security. The said mortgage was accompanied by the bond of said Mitchell-McDermott Construction Company to said George H. Fitzgerald. On the same day, September 13, 1912, the said George H. Fitzgerald assigned and transferred unto the defendant the said bond and mortgage to secure the payment of $20,000. On the same occasion and as part of the same transaction and for the purpose of the mutual protection of the parties, the defendant, who had advanced the $17,000, and the guardian of the plaintiff, who had advanced the $3,000 of said trust funds, entered into a participation agreement which recited that the defendant held the aforesaid bond and mortgage to secure $20,000 and interest, and that the said guardian had an interest in said bond and mortgage to the extent of $3,000. By the said participation agreement the parties thereto further certified and agreed that the ownership of the defendant in said bond and mortgage was to the extent of $17,000 and interest thereon at five per cent per annum from the date thereof, and that plaintiff's guardian was the owner of the balance of said mortgage debt remaining; but that the ownership of the defendant was superior to that of said guardian, " as if the party of the second part held a first mortgage for said sum of seventeen thousand ($17,000) dollars and interest thereon as aforesaid, and the party of the first part [plaintiff's guardian] held a second and subordinate mortgage to secure the interest of the party of the first part in said mortgage debt."

By the ownership agreement the defendant was authorized to collect all interest upon said bond and mortgage and to retain therefrom a sum equal to the interest then accrued upon the share therein of the said defendant, and then to remit to plaintiff's guardian any balance of interest remaining. The transaction was thus free from any possible ambiguity or misunderstanding between the parties. The respondent herein loaned $17,000, receiving as security what, in effect, was a first mortgage upon the property, and plaintiff's guardian loaned the sum of $3,000, accepting a second lien upon the property in accordance with the participation agreement entered into by the defendant and said guardian. The two loans were entirely distinct and independent of each other, although secured by the single mortgage held by the defendant under such declaration of ownership and interest through which the intent of the parties was fully expressed.

The mortgage thus taken ran along during the infancy of the plaintiff, the interest moneys upon the $3,000 interest of plaintiff's guardian in said mortgage being remitted to said guardian by the defendant as and when received. Plaintiff became of age on April 13, 1915. Shortly thereafter and in May or June, 1915, plaintiff's guardian instituted proceedings in the Surrogate's Court to procure a judicial settlement of his accounts as guardian and to obtain his final discharge as such guardian. The account of the guardian was filed with the surrogate and the guardian petitioned for its judicial settlement. Citation issued out of the Surrogate's Court to the plaintiff and she became a party to such proceeding. The guardian's account explicitly set forth the investment of the $3,000 of plaintiff's trust funds by said guardian, as above set forth. The plaintiff, then of full age, appeared in said accounting proceeding in person and by her attorney, and on June 18, 1915, plaintiff executed and acknowledged and filed with the surrogate of New York county a waiver and consent in writing, appearing generally in said accounting proceeding, waiving the issuance and service of a citation, approving of the accounts filed by her general guardian, and consenting that a decree be entered settling the said account and discharging her guardian from all further liability in reference thereto and without any further notice to plaintiff.

Thereafter, on July 7, 1915, a decree was entered in said proceeding in the Surrogate's Court for New York county upon the account of said guardian and schedules filed and the waiver and consent of the plaintiff, which decree, among other things, provided: " That said general guardian (John F. Caragher) make, execute and deliver unto Annie V. Reilly [plaintiff] his assignment of the bond and mortgage in the sum of $3,000, as mentioned in Schedule 'A'."

Concededly the bond and mortgage referred to in said decree was the ownership or participation agreement between said guardian and the defendant. On the day of the entry of said decree the guardian of plaintiff duly assigned to her the said participation agreement in said mortgage. The evidence indicates that at this time there was a payment of six months' interest due plaintiff upon her interest in said bond and mortgate. This interest was paid to and received by plaintiff by check of the defendant for seventy-five dollars on November 9, 1915. On December 29, 1915, plaintiff wrote defendant for a further interest payment then due, and received therefor defendant's check for six months' interest. On the first of March following, plaintiff also received a check from the defendant, payable to her order, for seventy-five dollars interest then due. It will thus be seen that plaintiff fully understood and acquiesced in the loan in question and received at least three interest payments thereon after she became twenty-one years of age.

In July, 1916, proceedings were commenced by the defendant to foreclose said mortgage, the mortgagors having defaulted. The mortgage was foreclosed, and the property bid in on foreclosure sale by the defendant for the amount of its claim, a small judgment for deficiency in defendant's favor being entered against the mortgagor. On April 3, 1917, plaintiff filed her petition in the Surrogate's Court of New York county praying that a citation issue out of the said Surrogate's Court requiring her former guardian to show cause why the decree entered on July 7, 1915, passing the guardian's accounts and discharging him, should not be reopened and why a decree should not be made and entered surcharging the account of said guardian with the sum of $3,000 and interest lost to plaintiff by reason of said foreclosure. The said guardian

answered in said proceeding, and the application of the plaintiff to reopen said account was denied by the surrogate. Thereafter and on August 6, 1917, plaintiff brought this action to recover of the defendant the $3,000 loaned by her guardian, besides interest, upon the claim that the act of the guardian in loaning her money on second mortgage was illegal and was not a loan of trust funds authorized by law, and that the defendant well understood the illegality of such loan and participated therein and, by reason of such participation, became liable to refund to the plaintiff the amount thus wrongfully, as she alleges, taken from her.

It seems to me that the answer to plaintiff's position is that defendant was in no manner responsible for the loss of plaintiff's trust funds; that, in fact, defendant did not participate in the illegal loan and in no matter profited thereby. The defendant took no part in negotiating the loan of plaintiff's moneys and never received a dollar of them nor any benefit therefrom. The money was paid over to the borrower by the attorney representing plaintiff's guardian. It is undoubtedly true that Fitzgerald, who was merely a law clerk in the office of the defendant's attorneys, as the money was being paid over by O'Beirne, representing plaintiff's guardian, to the Mitchell-McDermott Construction Company, understood for the first time that the moneys were from trust funds of the plaintiff, who was an infant. The participation agreement entered into by the parties shows that at that time the defendant understood the source of the $3,000 which was included as a subordinate loan under said bond and mortgage. But defendant was in no wise interested in plaintiff's moneys, and merely consented, for the purpose of facilitating the loan and without any profit to it, to participate in the mortgage for $20,000 under the express agreement that as to its loan of $17,000 it should have a prior interest in said mortgage to that of the other participant. The entire transaction was carried on between the representative of the borrower and the guardian of the plaintiff and his attorney. Therefore, it seems to me, the authorities relied upon by the appellant, where the courts have held that any person who receives property knowing it to be the subject of a trust, and that it has been transferred in violation of the legal duty

of the trustee thereof, takes it subject to the right of the *cestui que trust* and of the trustee to reclaim possession thereof, have no application to the conditions here presented. The cases of *First National Bank* v. *National Broadway Bank* (156 N. Y. 459); *Squire* v. *Ordemann* (194 id. 394) and other cases relied upon by the appellant, have no application here, as in those cases the money wrongfully dealt in was received by the party sought to be charged. The case of *National Surety Co.* v. *Manhattan Mortgage Co.* (185 App. Div. 733), recently decided in this court, is clearly distinguishable from the instant case. There we held the defendant liable because the guardian had purchased of the holder of a $25,000 mortgage, the defendant in that action, an interest in the amount of $5,000, using for the purpose of obtaining said interest therein trust moneys held by said guardian. The guardian then became a party with the defendant in that case to a participation agreement setting forth that the defendant held a prior interest in said mortgage and a prior lien upon the property covered thereby, to the amount of $20,000, and that said guardian held a subordinate lien therein to the amount of $5,000 as security for said trust funds. In that case the defendant handled the trust moneys used for the purpose of buying for the said guardian the second and subordinate interest in said mortgage, and the defendant received and retained a portion of said trust funds, amounting to nearly $500, to apply on back interest due upon a former mortgage upon the premises. This court held the defendant liable for the reason that it had handled the moneys in that case, had received a portion thereof, and had made itself a trustee of the fund, which it unlawfully diverted. No such conditions are to be found in the instant case. Here the defendant had no relation whatever to the funds of the plaintiff paid to the borrower by her guardian.

Moreover, I think the plaintiff, by her acts after reaching her majority and with full knowledge of the nature of the investment, fully ratified the same. She became a party to the accounting by her guardian. Upon the accounting she was represented by counsel. The account of her guardian fully disclosed the nature of this investment, and in writing she acquiesced in and approved of the same and consented to a

decree discharging her general guardian from further responsibility. Thereafter the plaintiff received at least three payments of interest under the participation agreement under said mortgage. After the foreclosure proceedings were had which cut off plaintiff's interest in the mortgage, she attempted through proceedings in the Surrogate's Court to reopen the accounting of her general guardian and to obtain a decree of the Surrogate's Court requiring said guardian to surcharge his account with the amount of her loss. In this she was unsuccessful. No appeal was taken therefrom, and it seems to me she was bound thereby. The decree of the surrogate discharging plaintiff's guardian is still in full force and effect, it never having been opened, vacated or set aside. I think by her acts with reference to said mortgage and in receiving the various interest payments thereon after plaintiff arrived at her majority, she clearly ratified the act of her guardian in thus investing her trust funds, and that beyond doubt plaintiff is bound by the accounting of her guardian and is estopped from now claiming the illegality of his acts. (*Norris v. Norris,* 85 App. Div. 113; *Matter of Klunck,* 33 Misc. Rep. 267.)

I think the court properly dismissed the complaint herein, and that the judgment appealed from should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN and DOWLING, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

In August, 1912, the Mitchell-McDermott Construction Company, the owner of the real property No. 266 East One Hundred and Sixty-fifth street, employed one Sinske, a real estate mortgage broker, to obtain a loan of $20,000 upon the property. The broker applied to this defendant for such loan. The defendant refused to make a loan of $20,000, but said it would make a loan of $17,000 secured by first mortgage upon the property. The broker reported the respondent's offer to the owner and was authorized by the owner to inquire whether respondent would consent to the participation of another party to the extent of $3,000 in a mortgage of $20,000. Respondent's treasurer said respondent would consent to such

First Department, April, 1919.          [Vol. 187.

participation, the $3,000 to be loaned by such other party to be subordinate to the respondent's loan of $17,000 upon the property. The said broker afterwards applied to one Patrick J. O'Beirne, an attorney, who agreed to procure the loan upon the payment of $450. O'Beirne procured the money from one Caragher, who was then the general guardian of the plaintiff, formerly Annie V. Reilly, the moneys being property which said Caragher held as such guardian.

The loans were closed at the office of the respondent's attorneys. O'Beirne brought the $3,000 in the form of cash and check. The bond and mortgage executed by the Mitchell-McDermott Company were executed and delivered to George H. Fitzgerald, who was a clerk in the office of the defendant's attorney, and in this transaction was clearly the defendant's agent. This was a bond and mortgage to secure the payment of $20,000, in which neither the interest of the defendant nor that of the guardian was in any way stated. Fitzgerald thereupon assigned the bond and mortgage to this defendant, reciting in the assignment that the same was in consideration of .$20,000, " lawful money of the United States, to him in hand paid by Dollar Savings Bank of the City of New York." There is no clear evidence as to whom this money was in fact paid by the representative of the guardian, except this statement in the assignment to the " Dollar Savings Bank," and also the evidence of O'Beirne, who acted for the guardian in closing the transaction in which he says: " At the closing Mr. Fitzgerald was the conduit or the person through whom the loan was made. It was explained by Mr. Sinske that he was the gentleman in the office of the attorneys for the Dollar Savings Bank and that they were making the loan through his name, and that the assignment would immediately and simultaneously take place, from the execution of the mortgage, right over from George H. Fitzgerald to the Dollar Savings Bank." The trial judge in his opinion stated: " The bank at no time occupied any fiduciary relationship toward the then infant, unless its agent, the attorney's clerk Fitzgerald, may be said to have been, for a brief period during the title closing, in the situation of a trustee. But it is plain that Fitzgerald was a mere conduit for the moneys that passed when title was closed." It thus appears that the trial judge

interpreted the evidence as showing, and assumed in his opinion, that these moneys were in fact paid to Fitzgerald, and by him paid to the Mitchell-McDermott Company.

At the same time this loan was closed, and as part of the same transaction, there was executed between Caragher, the guardian, and the defendant, what is called an ownership agreement which purported to state the rights of the parties in such bond and mortgage. It is provided in that agreement that the defendant was the owner of a $17,000 interest in the mortgage and that the guardian was the owner of the balance of said mortgage debt, " but the ownership of the party of the second part [defendant] is superior to that of the party of the first part [the guardian], as if the party of the second part held a first mortgage for said sum of seventeen thousand ($17,000) dollars and interest thereon as aforesaid, and the party of the first part held a second and subordinate mortgage to secure the interest of the party of the first part in said mortgage debt." The ownership agreement then further stated that the party of the second part, the defendant, was authorized to collect all the interest which was secured by that bond and mortgage and retain therefrom a sum equal to the interest then accrued upon the share of said bond and mortgage owned by the party of the second part, and then remit to the party of the first part any balance of the remaining interest, and in case of payment it was provided that the defendant should account to the party of the first part only for the excess over the moneys in said mortgage owing to the defendant. The right of the guardian to assign his interest was limited, and it was provided that no assignee of the said guardian should have any rights under this agreement or be entitled to any payment thereunder until such assignment shall have been exhibited to the party of the second part, and it was further provided that " whenever the proceeds of the ownership of the party of the first part in said bond and mortgage shall be paid to the holder of this agreement, this agreement and all assignments thereof shall be surrendered to the party of the second part."

Thereafter, upon default of the makers of said bond and mortgage the mortgage was foreclosed and the property bid in by the defendant for the sum of $17,000, and a deficiency

judgment entered against the mortgagor for a small amount owing to the defendant. The interest of the guardian of this plaintiff in the land was entirely wiped out in the foreclosure sale.

Upon April 13, 1915, this plaintiff became of age. Her guardian filed an account in which this investment appeared. The plaintiff was, at that time, living with her guardian and had been for upwards of fifteen years. She signed a consent to the passing of the account without reading the account and without having any knowledge of its contents and without any knowledge of the nature or circumstances of this investment. She afterwards left the home of her guardian and was married and then sought to have the guardian's account opened so that she might hold the guardian responsible for this loss and, if need be, hold the surety upon the guardian's bond. The application to reopen the account was denied. The plaintiff thereupon brought this action against the defendant, contending that the defendant participated in and aided and abetted in the guardian's misapplication of the fund held in trust for her and was liable for the amount of her loss sustained thereby. The defendant defended upon two grounds, *first*, that it occupied no position of trust and was not responsible for this loss by reason of any act in connection with the loaning of these moneys, and, *secondly*, that after becoming of age the plaintiff had ratified the transaction so as to estop her from making any claim for reimbursement on account of the illegality of the investment. The trial court made no finding upon the question of ratification but held that the defendant had done no act which would make it liable to the plaintiff for the loss of these moneys. From the judgment entered upon this decision this appeal has been taken.

It seems to me unnecessary to discuss at any length the question of ratification. A ratification of an illegal investment by a guardian can only be made upon full knowledge of the facts which would justify the infant in making complaint thereof.

Without any finding whatever upon the subject by the trial court, this court is without power to make a finding necessary to sustain the judgment, except possibly upon

undisputed evidence. The case of *Norris* v. *Norris* (85 App. Div. 113), cited in the prevailing opinion, was a case in which the question arose between the guardian and the ward, and the case showed a clear disclosure by the guardian to the ward after becoming of age, a reading over of the account, item by item, and an express approval and ratification by the ward. Under the circumstances there disclosed, it was held that to allow the ward thereafter to hold the guardian for improper expenditures would be to deny the right of settlement between the guardian and the ward under any circumstances after the ward became of age. Under the evidence in this case this ward never had knowledge until September, 1916, of the nature of this investment and of the fact that it was an illegal investment. After acquiring this knowledge in September, 1916, she has done all within her power to seek reparation for the wrong done to her, both from her guardian and from the defendant. She first made application for a reopening of the account of the guardian, which was denied, and she now brings this action to recover from the defendant as one who aided and abetted in the illegal investment. The trial court could not have found under this evidence that the plaintiff ratified that illegal investment. Moreover, even if such a finding had been made and was supported by the evidence, it would not affect this action. The question is not here between guardian and ward, but between a ward and a third party who unlawfully participated in the diversion of her funds.

Nor can the fact that the guardian had been released by the accounting affect the plaintiff's rights. It has taken from the defendant no right of indemnity which it could in any event have had, inasmuch as the guardian himself, or the surety upon paying for the defaulting guardian, could bring this action against this defendant, provided the defendant be legally liable for this misappropriation. The doctrine that a release of one tort feasor releases all rests upon the rule that one who is wronged can only have one satisfaction. There is no claim here that there was any compromise by the guardian or that there has been any satisfaction by any one of this claim. That doctrine, therefore, cannot apply.

The final and important question upon this appeal is as to the liability of the defendant for this illegal investment. In the

case of *National Surety Co.* v. *Manhattan Mortgage Co.* (185 App. Div. 733) we held in a very similar case, where a guardian invested in a subordinate interest in one of these participating mortgages, that the guardian was liable for that improper investment, as it was clearly an investment in a second mortgage, and that the guardian's surety, which was compelled to make good a charge against the guardian for such improper investment, might sue a mortgage company which had participated in the breach of trust by taking a superior interest in such a mortgage. It is true that there are some distinctions between this case and the case of the *National Surety Co.* cited. If, however, these moneys were paid through the agent of the defendant to the Mitchell-McDermott Company, the two cases are very similar. In my judgment, however, even though the moneys did not pass through the defendant or its agents, nevertheless the defendant so far participated in and aided and abetted the misapplication of the funds as to become liable to the plaintiff for the loss sustained thereby. Plaintiff's claim rests not alone upon a breach of trust by defendant in handling these trust moneys passing through its hands, but entirely apart from that upon the rule as well stated in *Bank* v. *Byrnes* (61 Kan. 459, 464): " As a general principle, all persons who knowingly participate or aid in committing a breach of trust are responsible for the wrong and may be compelled to make good the loss." In the opinion in the case of the *National Surety Co.* (*supra*) numerous authorities were cited to the effect that all persons who knowingly participate or aid in committing a breach of trust may be compelled to make good the loss. In Cooley on Torts (3d ed. 244) the rule is stated: " All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor." Further, any one " ' who does anything in furtherance of an act may be said to abet it.' " In Bowers on Conversion (§ 306) the rule is stated: " Every person who aids or assists in the conversion of property, whether with knowledge of the facts or in ignorance thereof, is responsible to the owner for all the damages sustained thereby, although it was done by the direction of one whose command he was bound to obey, as a servant who takes

property at the command of his master, or a soldier who takes property at the command of his superior officer." It cannot be said that this defendant was not interested in the participation by the guardian in this mortgage, because, through the participation alone, did the defendant find opportunity to invest its money. But the fact of benefit received is not material, where the party actively co-operates, assists and participates in the conversion or misappropriation. It is only where the. party stands by and fails to dissent that the fact that he is to be benefited thereby becomes material, as in such case the failure to dissent makes him a party to the misappropriation. In Bowers on Conversion (§ 307) it is stated: " And unless a person can be held to have adopted a conversion made by another, either in receiving the benefit of it or by aiding, encouraging or abetting it when made, he cannot be held answerable for it on the ground that he merely suffered it to be done and did not resist it." (See, also, *Bischoff* v. *Yorkville Bank*, 218 N. Y. 112.) It is true that the defendant had no interest in choosing the party which should participate with it in this mortgage; nevertheless, the loan could not have been made without some party participating, and this particular loan could not have been made without this defendant's participating with a trustee who was known to be acting unlawfully in the misapplication of trust funds. The defendant is driven to the position that, although a party to this participation agreement, it did not participate therein. While the defendant did not participate in the original procurement of the consent of the guardian to invest in the mortgage, it did participate in the consummation of the devastavit, and without its participation such consummation could not have been attained. It is probably true that the defendant had no knowledge until the day of the final consummation that the mortgage was to be shared in by a guardian unlawfully using funds for that purpose. Before the act was completed, however, it had full knowledge of the fact that it was dealing with a trustee who was violating his trust. If the defendant had then halted, this trust would not have been violated, and the money would have been saved. Instead of halting, it proceeded and became a party to the very agreement.

which unlawfully squandered the infant's money.   Not only did the act of defendant make possible this devastavit, but by this participation agreement the defendant acted as the trustee to collect the interest for this delinquent guardian and held the mortgage and collected the moneys thereon.   For it to say, therefore, that the defendant did not participate in this devastavit, did not aid and abet the same, is, to my mind, to ignore a palpable fact.   To hold the defendant liable for the loss sustained by this devastavit would be exacting no penalty which the defendant does not deserve.   Any one who wrongfully deals with trust funds, either as a principal or as an abettor, does so at his peril, and within all the authorities that I have been able to find becomes subject to the penalty of being required to make good the loss sustained by the wrong which he has abetted.

The judgment should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

Judgment affirmed, with costs.