In the Matter of the Estate of SIGMUND WECHSLER, Deceased.

Surrogate's Court, New York County, January 23, 1940.

*Gifford, Woody, Carter & Hays*, for the Irving Trust Company, trustee.

*Baer & Marks*, for Stella Wechsler, objectant.

*Hurd, Hamlin & Hubbell*, for Richard S. Wechsler, Catherine W. Palmer, and Virginia W. Fields, objectants.

*Kugel, Freidin & Deitz*, for Doris Wechsler Freidin, as administratrix, etc., of Ralph V. Wechsler, deceased.

FOLEY, S.   This contested accounting proceeding involves objections filed to the accounts of the three trustees by Virginia W. Fields.   Under the will she is entitled to a vested interest of one-third of the remainder, subject to the life estate of her mother, the widow of the testator.   The two accounts were previously judicially settled by decrees dated respectively December 11, 1929, and July 13, 1932.

The application of the objectant here to vacate these decrees on the ground of fraud perpetrated by one of the executors and trustees, Ralph V. Wechsler, was granted in one of my previous decisions. (*Matter of Wechsler,* 152 Misc. 564.)   That determination included the vacatur of the decree dated February 18, 1929, which judicially settled the account of the executors.   The reopening of the latter decree and the filing of objections resulted in an extended trial before a referee.   His report was confirmed by the surrogate with certain minor modifications.   (*Matter of Wechsler,* 171 Misc. 738.)

The most important issue in that proceeding involved the validity of certain reconveyances of real property made by the widow of the testator to herself and the other fiduciaries as estate assets.   The validity of these reconveyances was sustained by the referee and by the surrogate.   Certain of the objections filed in the pending proceedings to the first and second intermediate accounts of the trustees attack these same transactions.   Upon the reasons and conclusion reached in the final determination of the executors' accounting, such objections have been overruled in the pending proceedings.

The principal remaining issue involves the alleged negligence and lack of prudence on the part of the trustees in retaining two parcels of real estate over the period of the two accounts in question. which extended from September 1, 1928, to August 31, 1931.   It is contended on behalf of the objectant that the real property should have been sold by the trustees very early in the period of administration of the estate.

The testator died in 1927.   The executors' account covered the period from July 4, 1927, to August 31, 1928.   The executors and trustees selected by the testator were his widow, his brother, who was an attorney and a specialist in real estate, and the Irving Trust Company.   All three trustees retained the brother as their attorney. There is convincing evidence that the corporate trustee was guided in the administration of the estate by the wishes of the family and particularly by the cofiduciaries, the widow and the brother.   There is also convincing testimony, particularly in her letters in evidence and in her verified accounts filed in this court, that the widow desired that the property No. 67 Park avenue, borough of Manhattan, should not be sold but should be retained within the trust.   In a

letter written by her and dated May 17, 1932, she expressed her disapproval of an offer of purchase of the property. Its terms strongly indicate the continuance up to that time of her opinion that the property should not be sold, except at a price satisfactory to her. She wrote: " Frankly the terms suggested are out of accord with my conception of the value of this building despite the character of the times. However, I shall seriously consider any reasonable offer that may be forthcoming, always bearing in mind that with patience we may soon enjoy a return to values commensurate with our justifiable expectations, based on the excellent location and character of this property which is after all *our greatest asset.*" (Italics supplied.) It is an important factor also that she was assisted in the draftsmanship of this letter by her son, who is one of the remaindermen and an attorney.

In the early years of the administration of the estate the apartment house yielded a net annual income of $50,000. The remaining assets were of much less importance in value and in yield of income during the entire period of the first two accounts of the trustees. The possibility of sale was currently considered by the three trustees. Here, as in *Matter of Clark* (257 N. Y. 132, at p. 139), it is a significant fact that neither the objectant, after she became of age, nor any of the other beneficiaries " ever requested that a sale be made." No lack of vigilance on the part of any of the trustees has been proved. The testator's family occupied an apartment in the building. The brother, who was a trustee, assumed personal charge of its management and he was assisted in later years by the son of the testator. The appearance of the widow as a witness demonstrated her keenness and business experience.

In my prior decision in the executors' accounting (*Matter of Wechsler*, 171 Misc. 738) I pointed out the strong indications of intent on the part of the testator that his realty should be held within the trust, subject to a discretionary and not an imperative power of sale. The will contained words of devise to the trustees. It also included words of devise to the remaindermen upon the death of the life tenant. Further indication of such intent was found in his grant of authority to the trustees to receive the rents and to defray " all taxes, amortization payments on mortgages, and other lawful charges upon the same." (*Stevens* v. *Melcher*, 152 N. Y. 551; *Matter of Doelger*, 254 App. Div. 178; affd., 279 N. Y. 646.) Additional significance must be given to the words so carefully chosen by the testator, because he was an attorney of long experience and a specialist in the law of real estate. I held that the language of the will thus brought the real estate left by the decedent within the rule that where a power of sale remains unexer-

cised at the termination of the trust period, the remaindermen take the realty in kind as devisees under the will. (Citing *Matter of Miller*, 257 N. Y. 349, 356; *Watkins* v. *Reynolds*, 123 id. 211; *Townshend* v. *Frommer*, 125 id. 446, 461; *Matter of Jones*, 136 Misc. 122.)

There is documentary evidence that as late as November 15, 1932, Virginia W. Fields, the sole objectant here, expressed in a letter her own desire that the apartment house be further retained and preserved as an asset of the estate. After the objectant became of age, therefore, she not only acquiesced but approved the previous policy of all the trustees in refraining from a sale of the property, except at an adequate price. Her conduct thus amounted to an acquiescence and an estoppel against her which, even if there was proven delinquency on the part of the trustees, would bar a surcharge upon her demand. (*Hoyt* v. *Dollar Savings Bank*, 187 App. Div. 243, 250; *Matter of Kent*, 146 Misc. 155, affd., 246 App. Div. 604; *Matter of Garvin*, 256 N. Y. 518, 520; *Matter of Sielcken*, 162 Misc. 54, 65; *Matter of Hall*, 164 N. Y. 196; *Matter of Niles*, 113 id. 547.) " Where the *cestui que trust* has assented to or concurred in the breach of trust, or has subsequently acquiesced in it, he cannot afterwards proceed against those who would otherwise be liable therefor." (*Vohmann* v. *Michel*, 185 N. Y. 420, 426.) " One who stands by and induces the belief that he assents will not thereafter be heard to complain of the act that another might have abstained from if dissent had been announced." (CARDOZO, J., in *Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.*, 233 N. Y. 470, 477.)

After the continuation over a long period of years of the policy of retaining the real properties, all the members of the family have attempted in these, and in other proceedings, to hold the only solvent trustee liable for a failure to sell. Upon the estimates of value which they allege, if they were successful, there would be a surcharge of from approximately $300,000 to $550,000 directed against the corporate trustee. The variations in values are based upon appraisals made as of certain dates when it is claimed a sale of the properties should have taken place.

In this respect the situation is much like that in *McCartin* v. *Traphagen* (43 N. J. Eq. 323; 11 A. 156; affd., 45 N. J. Eq. 265; 17 A. 809). There the executors of the estate were the mother of the family of beneficiaries and two other persons. One of these persons was an old man hopelessly insolvent and against whom a decree would have been worthless. The mother who had been an active participant in the alleged devastavit was also insolvent. The third fiduciary was a responsible man of property. One of the children brought an action on behalf of himself and the other

beneficiaries against the two surviving insolvent executors and the estate of the deceased solvent executor to enforce a recovery on the ground of alleged misconduct. The court found that the action was brought against the mother, as one of the defendants, without any expectation of recovery from her. The circumstances surrounding the litigation made it absolutely certain that this suit was " the result of a family combination to fasten this claim, either in whole or in part," upon the estate of the solvent fiduciary. The court further observed that while such a combination would not prevent the judicial enforcement of the rights of the parties against a fiduciary who was proven to be delinquent, yet the general picture of ostensible hostility covered by a design animated by a common purpose required careful scrutiny. In summarizing the situation the court said: " But the fact that parties, standing apparently in an attitude of hostility to each other, were not so in fact, but were in truth animated by a common purpose, that their ostensible positions towards each other in the litigation were deceitful, would induce a court always to be extremely vigilant to see to it that a claim which was false in fact was not pronounced just."

The same unpleasant picture is presented in the pending proceedings where it has been demonstrated that the attacks made upon all the fiduciaries are directed at the only trustee which could respond in money damages. The motives and objectives of the members of the family of the testator are clearly revealed. The record, however, is barren of any evidence sufficient to sustain the charges against any one of the fiduciaries. The testimony shows that during the entire period the corporate trustee was ready and anxious to sell the real properties.

Upon the entire evidence on this issue of retention, the surrogate as the trier of the facts finds that no negligence, lack of prudence or other legal ground of surcharge has been established against any of the trustees. (*Matter of Clark*, 257 N. Y. 132; *Chemical Bank and Trust Co.* v. *Ott*, 274 id. 572, modfg. and affg. 248 App. Div. 406; *Matter of Pinney*, 278 N. Y. 507, affg. 250 App. Div. 60; *Matter* of *Kent*, 146 Misc. 155; affd., 246 App. Div. 604.)

My finding applies not only to the conduct of the trustees in the retention and management of the property No. 67 Park avenue, borough of Manhattan, but also to the property No. 4824 Broadway in that borough. The sale of this property was complicated by the fact that the estate owned only an undivided one-half interest, with title in the remaining half vested in the beneficiaries of another estate. Even the expert who testified for the objectant conceded the great difficulty of the sale of the Wechsler estate's interest in the property at an adequate price unless the consent of the other owners could be secured.

The decline in value and in income of these properties was caused by conditions arising out of the economic depression which so fundamentally affected real estate in this city. For the results of these unfortunate and unpredictable circumstances none of the trustees can be surcharged. (*Matter of Clark, supra.*)

All the objections on this phase of the case have been overruled.

All the remaining objections were disposed of upon the trial.

For the convenience of the attorneys in preparing the decrees the following summary is made:

The following objections to the first intermediate account of the trustees are overruled: Nos. 1, 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 26, 27, 28 and 29. The following objections have been withdrawn: Nos. 6, 7, 8, 9, 17, 22, 23, 24 and 30. Objection No. 25, relating to the computation of commissions, is reserved for the settlement of the decree.

The following objections to the second intermediate account of the trustees are overruled: Nos. 1, 2, 3, 4, 5, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30 and 31. The following objections have been withdrawn: Nos. 6, 7, 8, 27, 28 and 32. Objection No. 16 was withdrawn in part and overruled as to the balance.

Submit separate decrees on notice settling respectively the first and second accounts as to the objectant, Virginia W. Fields, since such decrees were reopened only as to her.

### Third and supplemental account of trustee.

The issues in the third and supplemental accounting proceedings of the trustee were raised by the objections filed by the widow of the testator, who is also a cotrustee, and by his three children, who are the vested remaindermen of the residuary trust. The accounts cover only the transactions of the trustee, The Irving Trust Company. The widow, the only other surviving trustee, did not join in them or file her own accounts. The general background of the administration of the estate has been considered in my prior decisions. (*Matter of Wechsler*, 152 Misc. 564; *Matter of Wechsler*, **171** id. 738; *Matter of Wechsler*, N. Y. L. J. June 30, 1939, p. 3023, and *Matter of Wechsler*, decided herewith.)

Certain of the objections relate to the retention of real estate during the period of these pending accounts from August 31, 1931, to July 31, 1939. Previous efforts of one of the objectants to surcharge any or all of the trustees for failure to sell the real properties during the period of the prior accounts have been denied.

The surrogate specifically finds upon the evidence that no negligence or lack of prudence or vigilance, or other legal ground of surcharge has been established against the accounting trustee for

the period of the pending accounts. The reasons stated and the authorities cited in my other decisions (*supra*) apply here.

All the objections filed by each of the objectants upon the issue of the retention of the real properties are, therefore, overruled.

The surrogate finds that there is no evidence to sustain a surcharge in connection with the investment in the mortgage participation upon the property No. 825 Gerard avenue, in the borough of Bronx. The investment was made on September 3, 1931. There is ample evidence of prudent investigation and inspection preliminary to the placing of the mortgage a short time before the funds of this estate were invested in part of it. Eight years after the investment was actually made it is attempted to show that the property was not worth its appraised value at the time of the original investment. The evidence of the expert for the objectants on this phase of the case is rejected by me as entirely unsatisfactory and unconvincing. The trend of the decisions of the Court of Appeals in refusing to surcharge a trustee or quasi-trustee who acts honestly in the making of an investment in a mortgage or in part of a mortgage is demonstrated by the recent authorities of *Mills* v. *Bluestein* (275 N. Y. 317); *Matter of Smith* (279 id. 479), and *Feist* v. *Fifth Avenue Bank* (280 id. 189).

The objections to the making of this investment are, therefore, overruled.

All the remaining objections were disposed of at the close of the trial by the rulings of the surrogate.

Submit decree on notice settling the third account of the accounting trustee and its supplemental account accordingly.