CHEMICAL BANK AND TRUST COMPANY, Formerly THE CHEMICAL NATIONAL BANK OF NEW YORK, as Trustee under a Certain Trust Indenture Dated February 19, 1929, and as Trustee under a Certain Supplemental Indenture Dated April 12, 1930, Executed by MARY A. OTT, Deceased, Respondent-Appellant, *v.* MARGARET K. OTT, Individually and as Executrix, etc., of HENRY L. OTT, Deceased, CLARENCE F. OTT, LILLIE OTT SNYDER, ALFRED W. OTT, BLANCHE MARYE OTT HAWKINS, JOHN LAPSLY OTT (Appeal Withdrawn), MARY LOUISE OTT, CLARENCE CHARLES MEIXNER and CHARLES BERNARD IRVIN MANTEUFFEL, Appellants-Respondents, Impleaded with EDITH MARGARET OTT MEIXNER, RUBY FLORENCE OTT MANTEUFFEL and CHEMICAL BANK AND TRUST COMPANY, as Administrator with the Will Annexed of MARY A. OTT, Deceased, and All Other Persons Who, as Assignees, Legatees Next of Kin, Issue or Otherwise of the Said MARY A. OTT, Deceased, or of Any of the Above-named Parties, or by Purchase, Inheritance or Otherwise Have or Claim to Have an Interest in the Property Which Is the Subject of This Action, Which Persons, if Any There Be, and Their Names and Residences, Are Unknown to the Plaintiff, Respondents.

First Department, July 3, 1936.

*Thomas B. Gilchrist* of counsel [*Henry W. Taft, Catherine Noyes Lee, William G. Fennell* and *W. Dickson Cunningham* with him on the briefs; *Cadwalader, Wickersham & Taft,* attorneys], for the defendants Clarence F. Ott, Alfred W. Ott, Lillie Ott Snyder and Blanche Marye Ott Hawkins.

*Jas. Madison Blackwell,* guardian *ad litem,* for the infant defendants Mary Louise Ott, Clarence Charles Meixner, Charles Bernard Irvin Manteuffel and all unborn persons.

*Philip W. Lowry* of counsel [*Hill, Lockwood & Redfield,* attorneys], for Margaret K. Ott, individually and as executrix, etc., of Henry L. Ott, deceased, defendants.

*Alfred McCormack* of counsel [*Carl A. deGersdorff, George M. Billings* and *George B. Turner* with him on the brief; *Cravath, deGersdorff, Swaine & Wood,* attorneys], for the plaintiff Chemical Bank and Trust Company, as trustee, etc.

*Paul A. Crouch* of counsel [*Joseph F. Mann* with him on the brief; *Clark, Carr & Ellis,* attorneys], for the respondents Mrs. Meixner and Mrs. Manteuffel, remaindermen.

GLENNON, J. We are in accord with the views expressed by Mr. Justice DORE, except as to the formula for calculating damages.

In our opinion, the amount of the surcharge should be based solely on the loss to the estate, consisting of the difference between the price finally received and the amount that would have been realized if the trustee had performed its duty at the expiration of the eighteen months' period, which commenced at the date of the death of the settlor. The judgment should be modified as thus indicated.

. In order to avoid the necessity of remitting the case to the referee for the purpose of fixing damages, counsel may submit on notice the actual figures with calculations of the loss, so that it may be reflected in the judgment to be entered.

MARTIN, P. J., and UNTERMYER, J., concur; DORE and COHN, JJ., dissent in part.

DORE, J. (dissenting). This is an action for a declaratory judgment and an accounting instituted in 1931 by the Chemical Bank and Trust Company, formerly The Chemical National Bank of New York, as trustee of *inter vivos* trusts created by Mary A. Ott, the settlor, on February 19, 1929. The trust *res* consisted of the settlor's very extensive holdings of shares of Standard Sanitary Manufacturing Company which, during the period of the trusts, merged with American Radiator Corporation. The amended complaint seeks a judicial accounting and a declaratory judgment

confirming the validity of the original trust indenture of February 19, 1929, and of certain subsequent instruments affecting the trust executed by the settlor after its establishment.

Under the original trust indenture of February 19, 1929, the plaintiff bank (hereinafter usually referred to as the "trustee") received 218,400 shares of common and 1,743 shares of preferred stock of the Standard Sanitary Manufacturing Company. The original trust indenture provides for a trust revocable by the settlor during her lifetime under the terms of which the entire income was to be paid to the settlor during her life and upon her death the corpus was to be divided into four equal shares, one share given outright to her son Henry L. Ott, one share given outright to her son Clarence F. Ott, one share in trust for her daughter Lillie Ott Snyder, and the remaining share in trust for her son Alfred W. Ott. It was also provided that when Lillie Ott Snyder died the other children were each to receive one-third of the trust for her, and similar provisions were made with reference to the trust for Alfred.

By an indenture executed April 12, 1930, the share of the settlor's son Clarence, originally absolute at the settlor's death, was made a life estate for Clarence's life with remainders to his daughters, Mrs. Hawkins, Mrs. Meixner and Mrs. Manteuffel; and the Lillie Ott Snyder and Alfred Ott trusts were continued as life estates with cross-remainders under which Clarence's daughters were also remaindermen.

Mrs. Ott died June 23, 1930. Controversies immediately arose among her children with respect to the validity of the instruments which modified the original trust indenture, with respect to the probate of her will, and other matters relating to her affairs. About six weeks after her death, these controversies were sought to be disposed of by a written agreement made on August 2, 1930, with the trustee, in which Mrs. Ott's four children and one grandchild, Mrs. Hawkins, the daughter of Clarence, all adults, joined. In the original indenture the settlor had named Henry L. Ott and Henry Almstedt as "advisers" to the trustee, and said Almstedt was also made a party to the agreement of August 2, 1930. None of the children of Clarence Ott, except Mrs. Hawkins, joined with their father in signing the agreement. Accordingly it was not binding upon Mrs. Manteuffel and Mrs. Meixner, children of Clarence Ott, nor upon the infants.

The agreement, made after negotiations to settle the various disputes, provided *inter alia* that the plaintiff trustee would institute proceedings, originally contemplated as a friendly suit, to determine the validity of the instruments of March 22, 1929, and April 12, 1930; that Henry and Almstedt would resign as "advisers" under

the trust agreement; that Clarence would withdraw his opposition to the probate of his mother's will; that Henry would not qualify as executor under the will and plaintiff bank would be appointed executor instead; that plaintiff would pay certain balances due Henry on a $100,000 advance that had been made by him to his mother; that Henry would submit a statement showing assets and liabilities of his mother's estate; that no claim would be asserted against him as her agent and accountant for many years prior to her death; that the validity of the withdrawal of certain stock rights from the trust made by the settlor would be judicially determined; that 479 shares of American Radiator standing in the name of Alfred, which were in Mrs. Ott's possession at her death, would be delivered to Alfred; that the validity of gifts of stock made by Mrs. Ott during her lifetime would be judicially determined; that all the acts of the trustee were ratified to August 2, 1930, and the parties agreed to hold plaintiff harmless, and also agreed that plaintiff was entitled to commissions as provided in the original trust indenture.

Following this agreement of August 2, 1930, which was signed by plaintiff on August 9, 1930, letters of administration c. t. a. were issued to plaintiff on September 29, 1930, and this litigation was instituted January 29, 1931. The referee has found that no one had questioned plaintiff's authority to act as trustee under the original trust indenture, and that, on the contrary, plaintiff or its predecessor was recognized by the settlor during her life and by her children after her death as trustee, entitled to act and duly acting to administer the trust; that the validity of the original trust indenture was solemnly recognized and it was agreed that the plaintiff continue to act as such trustee; and that this was the consistent course of action until February, 1933, when all of Mrs. Ott's children joined in an attack upon the trustee on various grounds seeking to surcharge its accounts for the depreciation of the trust fund and to hold it as an interloper liable to account as a trustee *de son tort*.

The original answers of the life tenants put in issue the legality of the April 12, 1930, instrument which changed Clarence's share from an outright remainder to a life estate, and claimed lack of capacity of the settlor, duress and undue influence. As the case progressed, the life tenants raised numerous other issues by amendment and by objections to the account dealing with the validity of the trust instruments, the modifications thereof, and the whole administration of the trust by the trustee. These issues were, to a large extent, adopted by the guardian *ad litem* and to some extent by the estate of Henry Ott, who had died during the litigation.

On consent of all parties the action was referred to a referee to hear and determine. After protracted hearings, involving about forty court days, the referee delivered his opinion and thereafter made and filed his report and decision overruling nearly all the defendants' objections and contentions, and determining, in effect, that the trust instruments and the settlor's modifications thereof were valid and binding in all respects; that the conduct of the life tenants has estopped them from questioning these instruments or questioning the acts of the trustee prior to the settlement of August 2, 1930, and that the trustee should not be surcharged for retaining American Radiator and Standard Sanitary stock, except to the extent that this stock should have been liquidated to provide a fund for the payment of inheritance taxes, after August 9, 1930, and during the period embraced between August and September, 1930, when the stock sold at twenty-five.

The appeals from the judgment entered on the referee's decision involve, in substance, the validity, construction and effect of the trust instruments, the validity and effect of the settlement agreement of August 2, 1930, the right of the defendants to surcharge the plaintiff upon its accounts as trustee for alleged negligence and improper management of the trust estate, and, in particular, for the alleged negligent retention of American Radiator stock.

There were two main issues of negligence asserted: the first was based upon plaintiff's claimed negligence in retaining the whole trust fund during the period of the depression and up to the time of the decree in American Radiator stock, while the stock depreciated, and in failing to diversify the trust holdings; the second related to plaintiff's failure to create within a reasonable time a cash fund for estate and inheritance taxes.

Various other charges, too numerous to detail here, were also made. In a comprehensive and able opinion, covering about seventy printed pages in the record, discussing in sufficient detail all of the multifarious contested issues, and showing a clear and firm grasp of the whole case in all its ramifications, the learned referee dismissed, upon the merits, practically every charge but one involving plaintiff in liability.

The claim against plaintiff on the first charge of negligence was dismissed, but as to the second the referee held that "the trustee was negligent in failing to create within a reasonable time after August 9, 1930, a cash fund adequate to provide for the payment of inheritance and estate taxes, debts and costs of administration in each of the three trusts for Clarence, Alfred and Lillie," and further held that if the radiator company shares had been sold by the trustee within a reasonable time after August 9, 1930, a price of

twenty-five dollars a share could have been realized for the tax fund, and accordingly he surcharged the trustee the amount of $373,748.50, interest included, for negligence in failing to sell within approximately forty-six days after August 9, 1930, sufficient common stock to create the necessary tax fund.

Plaintiff, as trustee, appeals from so much of the judgment entered on the referee's report as thus surcharges the plaintiff's account, and also from so much of the judgment as directs plaintiff to pay out of the principal of the trusts certain fees and disbursements to the attorneys for the three defendant life beneficiaries, and from an order granting the aforesaid fees and disbursements.

The defendants Lillie Ott Snyder, Clarence F. Ott, Alfred W. Ott and Blanche Marye Ott Hawkins, the defendant Margaret K. Ott, individually and as executrix of Henry L. Ott, deceased, and the infants Mary Louise Ott, Clarence Charles Meixner and Bernard Irvin Manteuffel, by their guardian *ad litem*, have filed cross-appeals from various portions of the said judgment. The defendants Edith Margaret Ott Meixner, Ruby Florence Ott Manteuffel, remaindermen and adult children of Clarence Ott, the defendant John Lapsly Ott, and the Chemical Bank and Trust Company, as administrator with the will annexed of Mary A. Ott, deceased, have not appealed. The defendant John Lapsly Ott, who was an infant during the litigation and represented, as were the other infants, by the guardian *ad litem*, has since become of age and, although originally an appellant, withdrew his appeal after becoming of age. The remaining infants are Mary Louise Ott, a daughter of Henry, and two sons of Mrs. Meixner and Mrs. Manteuffel, vested remaindermen, and are represented by the guardian *ad litem*.

In view of the referee's clear and comprehensive opinion and full report, it is unnecessary and inadvisable to consider in detail in this opinion all the numerous charges and claims that were litigated, since, after an examination of the whole case, it is our opinion that the decision of the referee and the judgment entered thereon and the orders made and filed are correct and should be affirmed, except as to the basis and amount of the surcharge, an interest item on estate taxes, and the amount of certain fees allowed. We will, therefore, discuss in this opinion only those items which either require modification or are necessary to be stated in order to understand the nature and extent of such modification.

With regard to the construction of the original trust indenture and the modifications thereof, the referee properly held that the original indenture of February 19, 1929, extended by its terms to the trustee immunity from liability for loss resulting from the retention of the original securities delivered by the settlor to the

trustee, or from the exchange of such original securities for American Radiator shares, but extended no such immunity from liability for loss resulting from the *retention* of the American Radiator shares received in exchange; and that accordingly so far as those shares were concerned, the trustee, in the care and management of the investment, was bound to employ such prudence as prudent men of discretion employ in such matters in their own like affairs. He also properly held that a great trust company, having at its command special knowledge of market and financial conditions and an organization skilled in the investment of funds, must, in the exercise of ordinary care, bring to the management of estates intrusted to its care this specialized knowledge and experience, since an ordinarily prudent man in the exercise of ordinary care would not fail to do this in the management of his own affairs if such advantages were available to him. He also ruled that the question of retaining or disposing of the shares of common stock was neither ignored nor neglected by the trustee, but that it was its honest and best judgment that the stock should not be sold at the then prevailing depression prices already reached when the trustee was, for the first time, finally in complete control after the settlement of August 9, 1930; he further held that the net depreciation of ten or eleven points between August, 1930, and the date of the account was not so far out of line with the depreciation of other high-grade securities as to indicate legal fault in retaining the investment; that if there was error, it was an error of judgment and was not negligence for which the trustee might be surcharged, and that the trustee was not guilty of fraud, bad faith or divided loyalty as claimed. In these conclusions we hold that the referee's rulings are, in all respects, correct.

A different question was presented with regard to the failure of the trustee to pay out of the trust fund the taxes and the debts of the settlor's estate. The trust, being revocable and having been made for the use of the settlor during her life, was void as against the settlor's creditors; and as her personal estate in the hands of the administrator c. t. a. was entirely insufficient to meet the claims of creditors, the corpus of the trusts, by a derivative liability, was subject to such claims, including the priority claims for estate and inheritance taxes. The trustee was under a legal obligation to provide funds for the payment of such taxes, and the surcharge, in the amount of $373,748.50, is based upon its failure seasonably to sell sufficient of trust securities to provide the fund; and the accounts of the trustee with reference to the three trusts for Clarence, Alfred and Lillie were surcharged to the extent that the proceeds of sales of common stock when actually and tardily made by the

trustee in 1932 and 1933 were less than they would have been if the trustee had seasonably sold the stock in August or September, 1930, at twenty-five dollars a share, the price that could then have been realized. No surcharge was properly allowed with reference to the shares held for the account of Henry L. Ott, as the court found that the trustee had offered to sell any of the shares held for his account upon Henry's instructions, and after his death on instructions of his representatives; and on the claim of Henry's estate that it was negligent in not turning over Henry's share on time and in not seasonably making the sales for the taxes on his share, the referee properly found for the trustee.

The fund necessary to be created by the sale of common stock for the payment of that part of the Federal estate taxes upon the three shares held in trust was properly found to be $229,728.05. This did not cover taxes on Henry's share which was held outright and had been paid by selling shares from his outright fourth share. Nor did the said amount include New Jersey inheritance taxes, as the referee rightly ruled that the trustee had preferred stock, rating AAA, that did not fluctuate much, could easily be liquidated, and ultimately was liquidated, in paying such taxes, and there was no negligence in connection with any failure to sell or making any sale of such preferred stock (except a finding respecting Clarence's life interest which is inconsistent with the referee's report and other findings and must be deemed an oversight or inadvertence).

The referee held that the shares necessary to create the fund should have been sold at twenty-five and at that price to realize the required fund of $229,728.05 it would have been necessary for the trustee to sell 9,189.2 shares of the common stock in August and September, 1930. The trustee actually sold 22,010 shares in 1932 and 1933 at much further depreciated prices, the greater part at nine and one-half. The record shows that after September 24, 1930, and down to 1936 the common shares never reached twenty-five. The effect of the referee's ruling, therefore, is that the trustee should have sold sufficient shares prior to September 24, 1930, a period of only forty-six days after the retirement of the " advisers," pursuant to the terms of the settlement agreement of August 2, 1930, and after the bank had qualified as administrator *c. t. a.* and the trustee had complete and untrammeled control. This was the basis of the surcharge.

While we hold that the trustee should be surcharged for failure seasonably to create the tax fund, we think that in the application of the referee's own formula there was error and, further, that the basis and formula itself were erroneous.

At the outset, even assuming that the forty-six-day period and the basic price of twenty-five adopted by the referee were a correct period and correct basic price, there was error in the application of the theory. The sole purpose of allowing recovery against the trustee for breach of duty is to afford just compensation to the trust for any loss proximately caused by the trustee's negligence, that is, the trustee must indemnify the trust and put it in the position in which it would have been but for the breach of duty. Assuming, therefore, that plaintiff should have realized a price of twenty-five dollars a share had it sold within a reasonable time, the record shows that the number of shares necessary to create the tax fund at that price would be 9,189.2 shares. Instead of selling 9,189.2 shares at twenty-five, the plaintiff, by its delay until 1932 and 1933, was compelled to sell 22,010 shares at, for the most part, nine and a fraction. The referee has surcharged the plaintiff for the value of the whole 22,010 shares at twenty-five dollars a share, which, however, is the value at the time the trustee was under a duty to sell *only* 9,189.2 shares. Even on the referee's basis of the forty-six-day period, that was error, as the number of shares wasted, that is, unnecessarily sold, was not 22,010, but only 12,820.8 (*i. e.,* the difference between 9,189.2 and 22,010), and the plaintiff's duty, if any, to account for the 12,820.8 which it failed to retain and, therefore, unnecessarily sold, did not arise until the date of the decree, and at that date it appears the shares were selling for seventeen and one-eighth to seventeen and one-half. Therefore, even on the referee's theory of surcharge, plaintiff was properly chargeable only with failure to sell 9,189.2 at twenty-five and for failure to retain 12,820.8 at the market price on the date of the judgment, namely, seventeen and one-eighth to seventeen and one-half.

But, further, we consider that the basis itself of the referee's theory of surcharge, as well as its application was erroneous. The Federal taxes, after an extension of six months which had been procured in June, 1931, were finally due and payable December 23, 1931, eighteen months after the settlor's death. The testimony of one of the trust officers of the plaintiff is that it was plaintiff's general practice to pay Federal estate taxes within the eighteen months' period or to make a deposit with the government on account of such taxes. In this case the trustee neither paid within that time nor made any part deposit. In view of all the facts and circumstances in the period August and September, 1930, including the fact that plaintiff was not appointed administrator c. t. a. until September 29, 1930, and that following the August second

agreement numerous controversies arose, and considering also that plaintiff could not properly have sold stock prior to the time that it was certain of the extent of its derivative liability as trustee, we have reached the conclusion that the plaintiff should not be held answerable for not selling in the forty-six-day period. A fairer and more equitable basis for the surcharge would be to take the average market price of the shares within the period of approximately fourteen months from the date when the administrator c. t. a. qualified, viz., from September 29, 1930, to the date the taxes were due, December 23, 1931, which was eighteen months from the date of Mrs. Ott's death. Taking the average price in such period is obviously fairer than taking the price on any one day, or the highest price in any one or two months in the period. Under the facts and circumstances here disclosed, the duty was to sell before the expiration of eighteen months from date of death and within fourteen months from date of qualification and complete control. This was a continuing duty. Clearly it would be improper to hold that a large block of this stock should be sold on any one day. The average market price of the common shares for the whole period during which the duty continued should, therefore, be taken as the revised and proper basis for surcharge.

Adopting this basis we find, as we further analyze the case, on the issue of negligence for failure to provide the tax fund a two-fold breach of duty by the trustee: (1) Failure *to sell* the necessary number of shares at the basic average price, and (2) failure *to retain* the number of shares unnecessarily sold in the depreciated market of 1932 and 1933 because of the prior failure to sell seasonably, *i. e.*, within the fourteen months' period.

·If a trustee fails to sell trust property which it is his duty to sell, the beneficiary can require him to make good any loss caused by his failure to sell. (American Law Institute, Restatement of the Law of Trusts, 1935, § 209, (1) subd. b, vol. 1, p. 575.) To apply this ruling to the case at bar it will be necessary to ascertain: (1) The average market price per share of the common shares of American Radiator stock in the fourteen months' period, from September 29, 1930, to December 23, 1931; (2) the number of shares necessary to be sold in that period at that average price to create the required fund of $229,728.05, which will be found by dividing the average market price per share into $229,728.05; (3) then ascertain the difference between the average price per share in the fourteen months' period and the price per share realized on the sales as actually made; and (4) multiply this difference by the number of shares necessary to be sold at the average price to create the fund, and the resulting sum will give in dollars the amount of the surcharge for the breach of duty for failure to sell.

If a trustee sells trust property which it is his duty to retain (in this case the shares unnecessarily sold), the beneficiary can charge him with its value at the time of the decree and with the income which would have accrued thereon if the trustee had not sold, or can require him to make specific reparation if this is reasonable under the circumstances. (American Law Institute, Restatement of the Law of Trusts, 1935, § 208, vol. 1, p. 569.) In this case specific reparation has not been requested by the beneficiaries, nor would it be proper under our construction of the trust indenture, and as there were no dividends paid on the stock after the date of breach for failure to retain, the trustee is not liable for income which in no event would have accrued, even if the stock had not been sold. Accordingly the formula for the surcharge for the second breach of duty, *i. e.*, the failure to retain the shares unnecessarily sold, is as follows: (a) Ascertain the number of shares unnecessarily sold (the difference between the total number actually sold, namely, 22,010 shares, and the smaller number it would have been necessary to sell if seasonably sold at the average price within the fourteen months' period); (b) multiply that number (a, *supra*) by the market price of the common shares at the time of the decree and this will give in dollars the gross surcharge for the failure to retain; (c) from this gross figure, however, there must be deducted and credited the amount actually realized on the sale of the number of shares unnecessarily sold; (d) the difference (between b and c) is the net surcharge for failure to retain.

The sum of the surcharge for failure to sell (4, *supra*), plus the net surcharge for the failure to retain (d, *supra*), will give the total surcharge for the breach of duty in not seasonably creating the fund for taxes.

The record contains a chart showing the prices of the stock throughout the whole fourteen months' period. The average price, the number of shares necessarily to be sold at such price and the other factors necessary to calculate the surcharge in accordance with this opinion are readily ascertainable and should be submitted on the settlement of the order herein; and the judgment should in our opinion be modified in accordance with the revised basis and formulæ predicated on the average price within the fourteen months' period as outlined above.

In thus fixing the period within which the trustee should have acted and the average price in that period as the basis for surcharge herein, we do not, of course, attempt to establish any rigid or arbitrary standard, either as to period or price, by which to measure in any case a trustee's duties; there is no rigid or arbitrary standard by which to measure the reasonable time within which a trustee,

who is bound to create a fund, may exercise discretion and beyond which the trustee may not delay; and what is a reasonable time or basic price depends in each instance upon the peculiar facts and circumstances in each particular case. (*Matter of Weston*, 91 N. Y. 502.) Under all the special circumstances in this case, including the type of shares held, the trustee's knowledge or information with respect to the shares, and the time factor involved, we deem the average price and fourteen months' period proper.

When the bank finally paid the Federal taxes, it was compelled to pay an item of interest, amounting to $10,292.11, incurred because it not only failed to pay the taxes in time, but failed to make any deposit whatever in part payment thereof. The referee refused to surcharge the trustee with this item on the ground that settlement negotiations with the Federal tax authorities might have been prejudiced if payment was made before such negotiations were consummated, and that an advantageous settlement was ultimately made. We think this was error. This item of interest would have been saved if the taxes had been seasonably paid, *i. e.*, before the expiration of the above indicated fourteen months' period. Having held that the trustee should have sold sufficient common shares to pay the taxes, it is consistent and logical that the trustee should be charged with this item of interest which would have been avoided had payment in whole or in part been timely made; and the judgment should be modified accordingly.

Among numerous claims made by the guardian *ad litem*, which have been overruled by the referee except the surcharge for failure to create the tax fund, the guardian *ad litem* contends that the trustee should be deprived of its commissions and all counsel fees, and urges a holding by this court in *Matter of Frame* (245 App. Div. 675) as authority for such contention. The state of facts in the case at bar is readily distinguishable from that presented in *Matter of Frame*, as in this case it has been properly ruled that the plaintiff, under all the facts and circumstances disclosed, was not guilty of such a dereliction of duty as to deprive it of commissions and a reasonable allowance for counsel fees. The guardian's contention with regard to the counsel fees is particularly without merit, as this action was originally instituted by the trustee pursuant to the terms of the settlement agreement of August, 1930, and the plaintiff, by reason of the combined attack that the defendant later made upon the trustee after February, 1933, has been compelled to defend an onerous burden of litigation in which almost all of the contentions raised by the defendants have been overruled. As to the commissions, while the trustee may have been guilty of poor judgment in not selling the common shares to create the tax fund, there

is not present the element of bad faith which was found in the *Frame* case, and commissions may be allowed as prayed for.

With regard to the gift to the settlor's son Alfred W. Ott of 479 shares of common stock of American Radiator and Standard Sanitary Corporation, the referee's final ruling was correct. The donative intention is admitted; the shares had been registered in Alfred's name; the settlor bought from Alfred the rights that accrued on these shares; when the shares were exchanged for the certificates of the merged corporation they were physically delivered to Alfred for indorsement, and this delivery, the clear intent to make a gift of the shares, as distinguished from the certificates, and the donor's purchase of the rights from Alfred, all require recognition both of the donor's intention and of Alfred's property right therein. The trustee was, therefore, not in fault in making, as it did pursuant to the terms of the settlement agreement, delivery of these certificates to Alfred.

Various contentions were made by the respective parties with regard to the excessiveness of fees and allowances, and it is necessary to consider both the reasonableness of the fees and disbursements allowed and the property allocation of such expenses against the different shares in the fund. The fee of $45,000 to the attorneys for the life tenants, who were successful before the referee on the surcharge, was made payable out of the three trusts alone and no part of this fee was chargeable or was charged against Henry's share. The remaining fees and disbursements, the general expenses of this litigation, were charged equally against the corpus of the four shares, including Henry's. The referee's fee was fixed by consent of all parties, and there is no appeal from that part of the judgment. Neither is there any appeal from the fee allowed to the guardian *ad litem*.

After considering the allowances made and the objections thereto, we find it proper that reduction in the amounts allowed should be made only as hereinafter indicated.

An allowance of $15,000 was made to a firm of attorneys who represented the Chemical Bank as administrator c. t. a. The bank, as administrator, was really a formal party to the litigation, rendered no accounts and represented an estate which was and is insolvent; the work done by this firm was for services rendered plaintiff with respect to matters solely affecting the administration and validity of the trusts and accordingly for services rendered to the bank as trustee, already represented as such trustee by another eminent firm of attorneys adequately compensated; and accordingly we conclude that the fee of $15,000 should not have been allowed. The trustee had the right to employ and did employ capable attorneys to represent it, as trustee, and if it wished to employ at

the same time a second firm of attorneys in the same capacity, compensation to the second group should be made by the bank and not out of the funds of the trusts. Accordingly an allowance of $2,500 will be made to the attorneys who represented the Chemical Bank, as administrator, a formal but necessary party, and the balance of the fee is disallowed but solely on the grounds indicated.

With regard to the fee of $45,000 to the attorneys for the three life tenants and Mrs. Hawkins, we find that out of the numerous issues raised the only issue upon which these defendants were successful before the referee was the surcharge which, under the revised formulæ set forth in this opinion, will be considerably reduced. Accordingly under all the facts and circumstances disclosed, we conclude that the said allowance of $45,000 is excessive, and should be reduced to $30,000 payable out of the corpus of the three trusts for Lillie, Alfred and Clarence Ott, allocated against said three trusts proportionally.

The representatives of Henry Ott's estate insist that his share of the corpus should not be required to pay one-fourth of the attorneys' fees and expenses of the bank either as trustee or as administrator, or the fees of the guardian *ad litem* and referee. However, it appears that Henry Ott's estate joined with the other defendants in the attack on the bank claiming that it was a trustee *de son tort* and negligent in the performance of its duties. In view of this and other circumstances disclosed in the record, we think the Special Term was correct in holding that Henry's share should bear its share of the expenses charged against it.

Except as hereinabove indicated the allowances and the allocation of the allowances and the disbursements are in all respects affirmed.

From all the above we conclude that the judgment should be modified by adjusting as indicated herein the surcharge on the basis of the average market price for the fourteen months' period; that the trustee should be further surcharged with the interest item of $10,292.11, and, in addition, the judgment should be modified with regard to the allowances as indicated, and, as thus modified, should otherwise, in all respects, be affirmed, with costs to all parties appearing by separate attorneys and filing separate briefs herein payable out of the estate.

COHN, J., concurs.

Judgment modified as indicated in opinion by GLENNON, J., and as so modified affirmed. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.