In the Matter of the Estate of SIGMUND WECHSLER, Deceased.

Surrogate's Court, New York County, May 20, 1939.

*Gifford, Woody, Carter & Hays* [*Forrest M. Anderson* of counsel], for the Irving Trust Company. respondent.

*Hurd, Hamlin & Hubbell* [*Francis B. Hamlin* of counsel], for Richard Wechsler, Catherine Wechsler and the objectant Virginia W. Fields.

*Baer & Marks* [*Donald Marks* of counsel], for the objectant Stella Wechsler.

*Kahn & Zorn*, for Ralph V. Wechsler.

*Jesse Freidin*, for Doris Wechsler Freidin, as administratrix, etc., of Ralph V. Wechsler, deceased.

Foley, S. There is presented in this contested accounting proceeding the question of the confirmation of the report of the referee and the disposition of the exceptions filed to it.

Sigmund Wechsler died on July 4, 1927. In his will he appointed his wife Stella Wechsler, his brother Ralph V. Wechsler, and the predecessor bank of the present Irving Trust Company, as executors and trustees. After certain relatively small pecuniary bequests, he created a residuary trust of all his personal and real property, with income for life to his widow and with remainder vested in title, as of the date of his death, in his three children. The executors retained as their attorney Ralph V. Wechsler. He had been associated with his brother in the practice of the law.

The first account of the executors was judicially settled by a decree dated February 18, 1929. Two subsequent accounts of these fiduciaries made in their capacity as trustees were settled by decrees dated December 11, 1929, and July 13, 1932.

An application was made to vacate these three decrees upon the principal ground of fraud perpetrated by the executor and trustee, Ralph V. Wechsler, upon the petitioner, Virginia W. Fields, who was an infant at the time of the making of the first two decrees. A summary hearing was had before the surrogate. That executor was removed and he was surcharged by the surrogate with the

amount of the secret commission received by him in the disposition of certain realty belonging to the estate and with the amount of part of the compensation of the nominated special guardian for the infant which he had improperly received. (*Matter of Wechsler*, 152 Misc. 564.) The nomination and appointment of the special guardian had been accelerated by the delinquent executor. By the direction of the surrogate in that decision there were likewise vacated as to the former infant not only the original decree but the two subsequent decrees made in the first and second accountings of the trustees. Ralph V. Wechsler died since the rendition of that decision.

The report of the referee now before the court deals only with the objections to the account of the executors which covers the period from August 2, 1927, the date of the issuance of letters testamentary, to August 31, 1928.

The referee, with commendable thoroughness, has covered in his extensive and able report of sixty-five pages, the disposition of the very many objections filed to the account, the consideration of the voluminous testimony submitted to him and the many and complicated questions of law raised by the copious briefs of counsel. These briefs aggregated eleven hundred pages. The referee's disposition of most of the issues is confirmed by the surrogate as hereinafter determined. Other findings and conclusions require discussion and certain of them require modification by the surrogate.

The principal dispute concerned the conveyances on September 14, 1927, a few months after the testator's death, to the estate by the widow of the decedent of the entire fee of a parcel of realty, No. 67 Park avenue, this city, and of a one-half interest in two other parcels. As stated above she is one of the executors and trustees. Deeds of the interests in this realty had been made to her in the lifetime of the decedent in the years 1925, 1926 and 1927. In the case of the parcel in which there was an entire interest, she had simultaneously executed a deed reconveying the property to the grantor corporation. The decedent had used this corporation as a " dummy " holding company for his realty transactions. The deed to her was recorded. The deed of reconveyance made by her was retained by the decedent and was not recorded.

There is evidence in the record that the motive for the transfers to the widow was a desire to avoid a possible foreclosure of mortgages on property formerly held by the dummy corporation or to escape the effect of deficiency judgments that might be rendered against it. The disposition of the issues before the referee and the surrogate did not in any way involve the rights of the creditors of the corporation. If any claims had been asserted by such

creditors, they would have been enforcible against the corporation or the transferee of its assets. (*Natelson* v. *A. B. L. Holding Co., Inc.*, 260 N. Y. 233.)

The referee has found that the property 67 Park avenue and the one-half interest in each of the other two parcels were actually the properties of the decedent.

It was contended before the referee by the attorneys for the former infant and for the widow that the conveyance of the properties to the estate constituted fraud upon the beneficiaries and that the widow could not have been compelled to return them because of the terms of sections 94 and 242 of the Real Property Law and the decisions construing them. It was urged that the widow was required to make the conveyances by the fraud and coercion of Ralph V. Wechsler, the brother of the decedent, who had acted as attorney for the three executors. The referee has correctly found that no such fraud or imposition by any of the executors has been proven. The surrogate approves the reasoning and conclusion of his report on this phase of the case.

The facts and circumstances surrounding the transactions are to be tested by the current conditions and not those developed in succeeding years by factors which have so seriously affected the value and income of real estate in this city. The latter factors have been caused by economic conditions and in respect of the properties here form no basis of surcharge against the representatives of the estate.

At the time of the conveyance by the widow to the estate of the parcel 67 Park avenue, the value of the equity in it was approximately $300,000. The interests in the other two parcels were valued for transfer tax purposes at $34,000. The Park avenue property yielded at that time a net income of approximately $45,000 a year. The testimony of the widow before the referee and her appearance and testimony before the surrogate at the inception of this proceeding convincingly showed that she is a shrewd and intelligent woman. Before her marriage she had a business experience of eight years. The testator was an attorney and it is clear that she knew intimately his legal and business problems. When she made the conveyances to the estate she was undoubtedly motivated by the knowledge that the real estate was held by her as a "dummy" only and that the properties were actually owned by her husband. At the time of the conveyances to the estate she acted honestly and for the protection and advantage of herself and her three children as beneficiaries. In the light of her own conduct, the contention that she could not have been forced to transfer the assets to the estate is without foundation in law or common honesty.

It is the contention of her counsel and of counsel for the petitioner, her daughter, that the Statute of Frauds and the provisions of sections 94 and 242 of the Real Property Law, and the decisions construing them, would have defeated an attempt to compel her to convey the properties to the estate. Reliance is placed upon certain authorities which deal with the purchase of real property, the payment of consideration by one person and the taking of title in another. These decisions hold upon such demonstration of facts, without additional proof, that restitution may not be enforced in equity and that no resulting trust in favor of the person who actually advanced the consideration for the purchase was created. (*Fagan* v. *McDonnell No. 1*, 115 App. Div. 89; affd., 191 N. Y. 515; *Binkowski* v. *Moskiewitz*, 144 App. Div. 161; *Weigert* v. *Schlesinger*, 150 id. 765; affd., 210 N. Y. 573.) These cases, however, have not the slightest application to the factual situation in this proceeding, where there are present the confidential relation of husband and wife and the promise of the wife as grantee united with an express admission of trust duty by performance and conveyance to the estate. (*Sinclair* v. *Purdy*, 235 N. Y. 245; *Wood* v. *Rabe*, 96 id. 414; *Foreman* v. *Foreman*, 251 id. 237; *Widmayer* v. *Warner*, 192 App. Div. 499.)

The evidence here more nearly resembles that in *Foreman* v. *Foreman* (251 N. Y. 237). There, as here, the relationship between the parties was the confidential one of husband and wife. The consideration for the purchase of the realty was paid by the husband. Title was taken in the name of the wife. She agreed to give him a deed upon demand and to dispose of the land or proceeds in accordance with his wishes. The husband in that case paid the taxes, the insurance premiums, the interest on the mortgages and the cost of repairs. Here, the husband or the holding company for him, from the time of the original conveyances to the wife, collected the rents and made the necessary expenditures for the carrying charges. The wife in the lifetime of the husband made no objection to his use of the rents. " The dominion that goes with ownership was continuously his. * * * The rule is now settled by repeated judgments of this court that the statute does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were repudiation, without redress, of a trust orally declared." (CARDOZO, Ch. J., citing *Sinclair* v. *Purdy*, 235 N. Y. 245, 253; *Gallagher* v. *Gallagher*, 135 App. Div. 457; 202 N. Y. 572, and other cases.) In the *Foreman* case quotation was made from *Sinclair* v. *Purdy* (*supra*): " It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts

the court in motion." A constructive trust was found to have been established and the determination of the lower courts that specific performance could not be enforced because of the provisions of sections 94 and 242, Real Property Law, was reversed.

In the opinion of the Surrogate there was sufficient evidence in the present record to enforce restitution, even if the wife here had not recognized and executed after the death of the husband the constructive trust which she had accepted in his lifetime. (*Foreman* v. *Foreman, supra; Sinclair* v. *Purdy, supra; Jeremiah* v. *Pitcher*, 26 App. Div. 402; affd., 163 N. Y. 574; *Matter of Poth*, 155 Misc. 116; affd., 246 App. Div. 522.)

If the Statute of Frauds had been pleaded by her, the question would still remain whether there had been " such an abuse of a confidential relation as to lead without a writing to the implication of a trust. * * * Equity gives relief on the ground of the perpetration of fraud independently of the Statute of Frauds. If such relief is granted, the legal estate remains in the grantee but equity holds her to the performance of her verbal agreement. A constructive trust is declared to hold and sell which fastens itself on the property. In cases of established fraud, where the conveyance is not set aside and the trust is not executed automatically by the provisions of the statute, equity will suffer the title to rest in the fraudulent grantee as trustee *ex maleficio* to execute the trust in accordance with its terms." (POUND, J., in *McKenna* v. *Meehan*, 248 N. Y. 206, 214, citing *Sinclair* v. *Purdy, supra; Wood* v. *Rabe, supra.*)

But this hypothetical situation is entirely academic because her voluntary action in making the conveyances after her husband's death forever closed the transactions. What was oral in its beginnings, had been confirmed by part performance in his lifetime and complete performance thereafter, '" with the result that conduct as well as words had become the signs of its creation." Her acts were reinforced " by words of promise, by the relation of man and wife, and by the unequivocal acts of confirmation and performance. In such circumstances, the plastic remedies of the chancery are moulded to the needs of justice." (CARDOZO, Ch. J., in *Foreman* v. *Foreman, supra.*) The only ground urged against the validity of her conveyances to the estate is that the court could not have compelled her to act if she had not been willing to do so. Professor Ames has framed the question as to a trustee who has agreed to carry out the trust. " Is it not a monstrous *non sequitur* to say that therefore the court will not permit him to act when he is willing? " (Ames, Lectures on Legal History, 291.) To which might be added, that a court of equity will not permit a lawful act to be undone where it has been completed.

Finally, upon this phase, the decision of the Court of Appeals in *Robbins* v. *Robbins* (89 N. Y. 251) is particularly illuminating and closely in point on the conduct of the widow here in attempting to repudiate the consequences of the transfer of the properties by her to the estate. In the *Robbins* case a father paid the consideration and took title to realty in the name of his son. The son agreed orally to hold the title to the premises for the use of the father and subject to his order. The father retained the management of the property, and later sold it to third parties and the son executed the necessary deed of conveyance. The father received the proceeds partly in cash and partly in a purchase money mortgage assigned by the son to him. The son then sued the father in equity to enforce the delivery of the mortgage to him. His contention was similar to that of the widow and the petitioning daughter here that under the provisions of the predecessor sections of sections 94 and 242 of the Real Property Law, and the Statute of Frauds, the son could not have been compelled to make the conveyance. Differently stated by the Court of Appeals, the question was whether these provisions of law " intended to prevent fraud can be successfully invoked to secure to a wrong-doer the fruits of his iniquity." Judge DANFORTH in virile language restated the rule that the statute could not be understood to protect fraud, and that whenever a case is infected with fraud, the court will not suffer the statute to protect it so that any one should run away with a benefit not intended. (Citing *Reech* v. *Kennegal*, 1 Ves. Sr. 123.) Again he cited from *Haigh* v. *Kaye* (L. R., 7 Ch. App. Cas. 469), where there was a constructive trust based upon a promise to convey and a consequent refusal based upon the Statute of Frauds: " If a defendant means to say that he claims to hold property given to him for an immoral purpose, in violation of all honor and honesty, he must say so in plain terms, and must clearly put forward his own scoundrelism if he means to reap the benefit of it * * * The statute of frauds was never intended to prevent the court of equity from giving relief in a case of plain, clear, and deliberate fraud." In the *Robbins* case it was pointed out that the wrong-doer was not being forced into court. He came in voluntarily " asking the court to aid him in the perpetration of his fraud, and without even the poor excuse found in other cases, * * *." The son " conveyed because in common honesty, and in fulfillment of his trust he was bound to convey." When he recognized his moral obligation to his father and conveyed the property under the latter's direction, his whole duty as trustee was discharged. So, in the present case, what the widow did years ago in restoring estate assets pursuant to what was then a matter of

conscience, honor and legal duty, may not be abrogated by a change of mind or of conscience or by a resort to the technicalities of the Statute of Frauds. Equity approves her voluntary performance of the trust and as the statutes no longer apply, there is no law which she can invoke to shield her from the completed duty. " The court will not allow the Statute of Frauds to be used as an instrument of fraud." (*Bork* v. *Martin*. 132 N. Y. 280, 285.)

Moreover, the referee has correctly found that it was immaterial whether the title to the realty was taken after death in the name of the holding corporation, all the stock of which was owned by the decedent, or whether it was taken in direct individual ownership of the estate of the decedent or of the executors and trustees. (*Matter of Bush*, 124 Misc. 674; *Matter of Friedman*, 177 App. Div. 755; *Matter of Cartledge*, 118 Misc. 131; affd., 203 App. Div. 899; affd., 236 N. Y. 515; *Matter of Winburn*, 136 Misc. 19; *Matter of Turley*, 160 id. 190.) The test is the substance and real ownership of the property and not the nominal manner in which it was held. (*Matter of Manning*, 232 N. Y. 512, affg. 196 App. Div. 575.) The former infant, similarly, has no basis of complaint against the conduct of her mother and the other executors in receiving the conveyances of what were at the time actual and valuable assets of the estate.

The surrogate, therefore, confirms the conclusions of the referee upon this phase of the proceeding. The surrogate further holds there was not the slightest basis for surcharge against any of the executors and trustees upon the objections relating to these transactions.

The next principal question arose over the objections filed by the former infant to the payment by the executors and trustees of certain sums on account of amortization of the mortgages upon the property No. 67 Park avenue, which the referee and the surrogate have found to be an asset of the estate. Certain of these payments were made upon the due dates. Other payments were made in advance of the due dates required by the terms of the mortgages. The referee has correctly held that the executors and trustees were justified in paying the amortization installments when due. The terms of the will expressly authorized such payments.

The referee has also correctly held that the handling of the realty was required to be conducted by the trustees, since the testator in paragraph twelfth expressly devised his realty to them as part of the residuary trust. Further indication of his intention that the trustees should retain the realty until the end of the trust term is found in paragraph fourteenth where he directed that upon the death of his wife, the life tenant, the trustees were to divide the

estate among the children who survived him and in which he further provided in words of present gift: " I give, *devise* and bequeath one of each of the said shares unto each of my said children * * *." The purpose and intent of the testator wherein he gave this authority to the trustees to manage the real estate, to receive the rents and to defray " all taxes, amortization payments on mortgages, and other lawful charges upon the same " are plain and unequivocal. (*Stevens* v. *Melcher*, 152 N. Y. 551; *Matter of Doelger*, 254 App. Div. 178; affd., 279 N. Y. 646.)

The power of sale over the realty contained in the will was discretionary only. Having sustained the finding of the referee that the payment of the amortization installments when due was justified, I am, however, unable to agree with his conclusion that the making of anticipated payments for amortization in advance of the due dates was improvident and negligent. There is sufficient evidence in the record to prove the current exercise of prudence and vigilance by the fiduciaries in making these payments. The estate at the time they were made was in ample funds. It appeared to the fiduciaries that it was the part of the current exercise of prudence, to reduce the second and third mortgages so as to place the realty in a position where it would be more easily saleable and where the danger of foreclosure might be more easily averted because of the large gross and net income derived from the property. In the light of history these payments are criticized as inadvisable. The conduct of the fiduciaries, however, is to be tested by the current exercise of their judgment. They are not surchargeable for changed economic conditions brought about by factors that could not have been currently anticipated. (*Matter of Clark*, 257 N. Y. 132; *Chemical Bank & Trust Co.*, v. *Ott*, 274 id. 572, modfg. and affg. 248 App. Div. 406; *Matter of Pinney*, 278 N. Y. 507, affg. 250 App. Div. 60.)

I find no evidence of negligence or bad faith nor any other ground in the record sufficient to sustain any surcharge against the executors and trustees for their conduct on this phase of the case. The report of the referee in this respect is therefore modified in accordance with these directions.

It is urged that the fiduciaries are liable for their failure to sell the real estate during the brief period of one year covered by this accounting. I have already pointed out that the general intention of the testator was that his realty, which he had devised to his trustees and in absolute ownership to the remaindermen after the termination of the trust, should be held within the trust subject to a discretionary and not an imperative power of sale. Where the power of sale remains unexercised at the termination of the

trust, the remaindermen take the realty in kind as devisees under the will. (*Matter of Miller*, 257 N. Y. 349, 356; *Watkins* v. *Reynolds*, 123 id. 211; *Townshend* v. *Frommer*, 125 id. 446, 451; *Matter of Jones*, 136 Misc. 122.) The referee has correctly found that no mandatory duty to sell the realty or to convert it into personalty was imposed upon the executors and trustees. The surrogate approves his conclusion in this regard and finds no basis of surcharge. (*Matter of Clark, supra,* and cognate cases cited *supra.*)

The referee has made a small surcharge of $190 against the executors for the failure to sell certain old office furniture used by the testator in his law library and their failure to sell certain law books. The surcharge has been directed by him against all three executors. The issue is of relatively small importance. In so far as the law books were concerned they appear to have been retained by family agreement and sentiment within the estate for the benefit of the son of the testator who was studying law. In any event the evidence shows at most a basis of surcharge against the executor and trustee, Ralph V. Wechsler, only. No negligence on the part of the other two executors has been proven. The surcharge is nullified as against the latter two executors.

The referee correctly held that the secret commission, amounting to $8,700 received by Ralph V. Wechsler in the sale of certain realty was a basis of surcharge against him alone. There is no evidence of the slightest knowledge or participation by the other two executors in this transaction. They may not be held liable for the secret corrupt act of their delinquent associate. (*Gould* v. *Gould,* 126 Misc. 54.)

The surrogate finds that the amount paid to Ralph V. Wechsler under the prior decree for his professional services rendered as attorney for the estate was reasonable and proper when tested by the size of the estate, the nature of the services rendered and other criteria customarily applied in the fixation of attorneys' fees in the administration of estates. (*Matter of Potts,* 213 App. Div. 59; affd., 241 N. Y. 593.) The widow and adult remaindermen executed and filed years ago specific consents to the amount paid. The reduction by the referee of the amount originally approved by the Surrogate in the decree on the first accounting was erroneous. His surcharge against the estate of Ralph V. Wechsler, the deceased attorney-executor, was likewise erroneous. No basis of surcharge against any one of the executors exists on this phase of the accounting. A like direction is made as to the award of costs made by the surrogate in the original decree. These costs were properly taxed and charged out of principal. The charge set forth in the account for the expense of preparing the account and charged out

of income payable to the life tenant was unauthorized. Since the life tenant, however, did not complain, but as executrix expressly approved the account, she waived her right to obtain reimbursement and is concluded by the decree which has not been reopened as to her.

All of the other objections to the account were properly disposed of by the referee. There remains for consideration only the arrangement for adjustment of the commissions which were awarded to the executors and trustees by the original decree and the further question of the method of payment of the expenses and costs of the present proceeding.

The original decree erroneously exempted the life tenant, one of the executors, from the payment of income commissions upon the amount of income paid to her. The decree provided, by inadvertence that these income commissions be paid out of principal. The decree has been reopened only as to the former infant who has a one-third vested interest in the principal of the fund.

By the error in the decree which charged commissions on income out of principal, the widow as life tenant escaped the payment of the sum of $15,891.54, which was the amount of the commissions properly chargeable out of her income. In addition, she received an additional benefit of $5,297.18, the commissions on income which were improperly paid to her out of principal. The total amount of the advantage which accrued to her was $21,188.72. Despite this fact the widow now contends that her co-executor the trust company should be compelled to pay the entire amount of the income commissions charged out of principal, including her share of the commissions actually paid to her. She further contends that she should be exonerated from any restitution to principal of her share of the commissions and in addition that she should be paid the income upon the amount which she claims should be restored by the corporate fiduciary. Common honesty should dictate that a delinquent fiduciary cannot be permitted to retain the monies which she improperly withholds or by way of aggravation that she should obtain a further unjust advantage by the payment of income upon contributions of a joint co-duciary arising out of her own delinquency.

In this situation, the surrogate holds that the liability of the corporate executor is limited to the share of the objectant in the principal of the estate. That share is a fractional interest of one-third. Each of the executors must restore the amount of income commissions improperly received by the particular executor. The amount paid to each for income commissions was $5,297.18. Each of the three executors is surcharged, therefore, with one-third of

that amount, or $1,765.73. Since this amount was properly chargeable as commissions payable out of income, the life tenant must reimburse her co-executor. Payment thereof out of her income must be made after her primary surcharge due principal is satisfied.

Commissions were also improperly taken by the executors in the original accounting on the unsold real property. (*Matter of Salomon*, 252 N. Y. 381.) The amount thus improperly paid to each of the three executors was $6,450. Since the share of the objectant was one-third of the principal, each of the executors will be surcharged with one-third of the amount of realty commissions, or the sum of $2,150 each. The aggregate surcharge against each executor for both income and realty commissions is therefore $3,915.73. The contention of the corporate fiduciary that because of estoppel against the life tenant it is required to pay only the amount of the surcharge diminished by the expectancy of the life tenant is overruled. Income, however, upon the amount paid by it into principal for the surcharge on income commissions may not be paid to the widow because of the estoppel caused by her conduct. (*Matter of Sidenberg*, 147 Misc. 742; *Matter of Garvin*, 256 N. Y. 518; *Matter of Sielcken*, 162 Misc. 54.) The amount of the surcharge for income commissions against the corporate fiduciary must therefore be earmarked within the trust. Earnings upon any investment made from the earmarked surcharge for income commissions are payable to the corporate fiduciary and not to the life tenant. Any income earned upon the amount of the surcharge for realty commissions is payable however to the life tenant, subject to her duty to make restitution for the amount of the surcharge against her. The amounts of all surcharges will, moreover, be subject to the proper charges against principal, including the costs and expenses and taxable disbursements of the present proceeding.

Since the executrix is the sole life tenant, an immediate direction to pay the amount of her surcharge out of the income already accrued or hereafter accruing to her, is made. (*Matter of Burr*, 143 Misc. 877; affd., 239 App. Div. 774.)

The conclusion reached in *Matter of Katz* (N. Y. L. J. Oct. 9, 1937, p. 1081), involved circumstances not present in the proceeding here. In the *Katz* case there was no question of diversion by the unsuccessful party, but merely the payment by her, as life tenant, of the costs and expenses of the proceeding awarded against her. Here, as in *Matter of Burr* (*supra*), diversion of estate monies by the life tenant has been found.

Finally, the taxable costs, disbursements and expenditures are directed to be charged out of the principal of the fund and not personally against any one of the executors. Such an award against

the estate of Ralph V. Wechsler would be futile because of the conceded lack of assets to pay it wholly or partially.

All the objections involving factual proof taken before the referee have been overruled by the surrogate with the exception of a small mathematical error in the over-payment of interest amounting to $65.39 on the Bernheimer claim. That amount was reached by arrangement of counsel. The extended hearings before the referee have therefore established no basis for liability against any of the executors. No surcharge, other than of commissions, has been found. The adjustment of commissions could have been disposed of before the surrogate upon a brief hearing.

In directing the payment of costs and taxable expenses and disbursements out of the principal of the fund, the surrogate has followed the practice adopted by the Appellate Division, First Department, in *Chemical Bank & Trust Co. v. Ott* (248 App. Div. 406, at pp. 420, 422; affd. and modfd., on other grounds, 274 N. Y. 572). In the opinion of Mr. Justice DORE, which was the unanimous opinion of the court upon that phase of the accounting, it was stated that the contention of the guardian *ad litem* that counsel fees should not be charged out of the principal of the trust fund was unfounded where the corporate trustee " has been compelled to defend an onerous burden of litigation in which almost all of the contentions raised by the defendants have been overruled."

The report of the referee, except as modified herein, is confirmed. All the exceptions filed to it, except as specifically sustained herein, are overruled.

Tax costs and submit decree on notice settling the account accordingly as to the objectant Virginia W. Fields.